[No. 3600.   October 6, 1931.]

DAVIDSON et al. v. ENFIELD.

[3 P. (2d) 979.]

Roberts, Brice & Sanchez, of Santa Fe, for appellants.

Reid, Hervey, Dow & Hill, of Roswell, for appellee.

OPINION OF THE COURT

SADLER, J.

This appeal originated in the form of a contest before the commissioner of public lands of the state of New Mexico, pursuant to the provisions of section 132-181, Comp. 1929.   From an adverse decision by the commisioner, the appellee prosecuted an appeal to the district court of Lea county, where the lands involved are located.

In such court the appellee prevailed, and the appellants now by appeal have removed the cause to this court for review.

In July, 1928, the appellee was the holder by assignment from one Wallace, trustee, of an oil and gas lease on some 19,000 acres of land located in Lea county, N. M. This and other acreage had been assigned to Wallace, trustee, by one H. T. Orcutt, out of state oil and gas lease No. 1091, theretofore issued by the commissioner of public lands to said Orcutt. The assignment to appellant included lots 1, 2, 3, 4, 5, and 6, section 5, township 21 south, range 36 east, being the lands covered by a further assignment here in controversy.

About July 15, 1928, at Fort Worth, Tex., the appellants agreed to purchase from appellee an assignment on the acreage just described at $12.50 per acre, or a total consideration of $2,959.50. The terms were cash in exchange for the assignment. Appellee declined to furnish an abstract of title, leaving it to the purchasers to satisfy themselves by wire to the commissioner of public lands, or otherwise, as to seller's right to make the assignment. On July 19th thereafter the appellee appeared with the assignment at the office of the appellant Davidson in Fort Worth, where he found both appellants and demanded the purchase price, offering to deliver the assignment in exchange therefor.

Following the commencement of negotiations for the assignment and on July 15th, 1928, appellant Doran, who had a personal acquaintanceship with the commissioner, wired him at Santa Fe of his proposed purchase, and inquired in substance if appellee could deliver good title: An answer wire was received the following day saying acreage stood in appellee's name with rentals paid to October 2d, and that he saw no reason why reassignment could not lawfully be made by him. In the meantime, rumors had reached appellants that there was some cloud on state lease No. 1091.

Accordingly, when appellee appeared with his assignment, in modification of the immediate cash transaction

originally contemplated, it was agreed orally between the parties that the purchase price in cash together with duplicate copies of the assignment should be deposited in First National Bank in Fort Worth; that the assignments should be transmitted by said bank to the aforesaid commissioner with instructions to approve and return one copy to said bank, upon the receipt of which by the bank the returned and approved copy was to be delivered by it to appellants and the money turned over to appellee. If the commissioner failed to approve, upon its return to the bank the assignment was to be redelivered to appellee and the money restored to appellants.

The three parties went in person to the bank about 4:30 p. m. on the afternoon of July 19th, after banking hours, for the purpose of effectuating this arrangement. There Davidson's check, bearing on its face a memorandum of its purpose, payable to Enfield's order, was indorsed by him and delivered to the bank, converted into a cashier's check, and held as cash pending the return of the assignment delivered to it at the same time by Enfield. The following day, in accordance with the instructions of the parties, the bank forwarded the duplicate copies of the assignment to the commissioner at Santa Fe requesting approval and the return of one copy for the assignees.

Acknowledging receipt of the assignment under date of July 25, 1928, the commissioner advised the bank of notice of contemplated suit affecting these lands delivered to him in the form of a letter by Catron & Catron, attorneys of Santa Fe, on July 20th, and stated that no action looking to approval could be taken for ten days thereafter. On July 31st the commissioner further advised the bank by letter that on July 28th he had been served with copy of complaint and lis pendens in a suit pending in the district court of Lea county instituted by Walter J. Wallace and others against appellee, Enfield, involving these lands, and that action on the approval of assignment to appellants theretofore transmitted would have to be deferred pending the outcome of such litigation. Upon receipt of this letter and on August 1, 1928, the bank wired the commissioner requesting him to return the assign-

ment. On August 3d both the bank and Enfield again wired the commissioner making a similar demand. The papers were returned to the bank, and on August 19th, upon demand therefor by Enfield, the duplicate assignments were returned to him. Within a few days thereafter the cash deposit was by the bank passed to the credit of Davidson, who was one of its depositors.

Thereupon this contest proceeding was initiated before the commissioner of public lands seeking to have the commissioner declare appellants the owners of an oil and gas lease on the 240 acres in question by virtue of said assignment. The subsequent proceedings whereby the cause reached this court through appeal are set out hereinabove.

We are confronted at the threshold of this case by a jurisdictional consideration. The appellee questioned in the first instance the jurisdiction of the commissioner of public lands to entertain a proceeding of this kind. Ordinarily the purpose of an appeal is to review errors assigned by the appellant, and the appellee in whose favor the judgment appealed from has been rendered is in no position to complain. An exception to this principle is recognized by section 2 of rule XV heretofore adopted by this court, but the jurisdictional joint raised by appellee is not within the purview of that rule. The want of jurisdiction in the commissioner to hear the contest, if it is wanting, is over the subject-matter of the proceeding. If he had no jurisdiction, then, of course, neither the district court of Lea county, nor this court, to which the cause was removed by successive appeals, has ever acquired any. Pointer v. Lewis, 25 N. M. 260, 181 P. 428; Geren v. Lawson, 25 N. M. 415, 184 P. 216; Valencia Water Company v. Neilson, 27 N. M. 29, 192 P. 510. If such jurisdiction was lacking, two void decisions already have been rendered in this matter; and now, unless we overlook the point because suggested by a party not in a position to assign error, a third void decree impends.

Jurisdiction of the subject-matter may not be conferred by consent. It is a fundamental consideration at all stages of any proceeding, and will be noticed by the court upon its own discovery or at the suggestion of any party. From

whatever source challenged, the court must pause, consider, and determine its jurisdiction before proceeding further; hence our inquiry into the subject at this time.

Jurisdiction of the commissioner of public lands to entertain this proceeding exists, if at all, under the provisions of section 132-181, Comp. 1929, reading as follows:

"Any person, association of persons, or corporation claiming any right, title, interest or priority of claim, in or to any state lands, covered by any lease, contract, grant or any other instrument executed by the commissioner, shall have the right to initiate a contest before the commissioner who shall have the power to hear and determine same. The commissioner shall prescribe appropriate rules and regulations to govern the practice and procedure of such contests."

The appellee expresses grave doubt whether this controversy is one of the kind authorized by the foregoing statute to be initiated before the commissioner. It is in effect, he contends, a suit against him for specific performance of the alleged agreement of sale whose terms are controverted, involving no ruling of the commissioner, nor any of the records of the land office, and regarding an instrument of assignment which had passed beyond his control by its return to the bank which sent it.

The consideration of this question has given us much concern, but after mature deliberation we are constrained to hold that the commissioner, under the language of the statute, had jurisdiction to entertain the contest in question.

The statute should be viewed in the light of the very broad powers conferred on the commissioner in the administration of the public lands of this state. It has been held that his jurisdiction over state lands under the applicable constitutional and statutory provisions, vests him with practically absolute dominion over such lands. State ex rel. Otto v. Field, 31 N. M. 120, 153, 241 P. 1027. Construing the general grant of powers over public lands of the United States conferred on the Secretary of the Interior and Commissioner of the General Land Office, certainly not broader than the general powers bestowed on our commissioner over state lands, the Supreme Court

of the United States in Caha v. United States, 152 U. S. 211, 14 S. Ct. 513, 38 L. Ed. 415, pointed to the language of the general grant as authority for certain contests under regulations of the Department before officials thereof, not specifically provided for by any act of Congress.

We do not intimate by this statement that the commissioner of public lands in New Mexico might go beyond the statute in entertaining contests. In the administration of the public lands of the United States, the Land Department is held to be a special tribunal with exclusive jurisdiction of issues affecting title to the public lands until patent is issued. Bockfinger v. Foster, 190 U. S. 116, 23 L. Ed. 836, 47 L. Ed. 975; Reed v. St. Paul M. & M. Ry. Co. (D. C.) 234 F. 123. There is nothing in our contest statute to indicate that the jurisdiction thereby conferred is exclusive. The Caha Case does demonstrate, however, the length to which the federal courts go in sustaining the absolute dominion of the Land Department over the public domain. See, also, Wiseman v. Eastman, 21 Wash. 163, 57 P. 398.

Concerning the language of our contest statute in American Trust & Savings Bank v. Scobee, 29 N. M. 436, 224 P. 788, 790, we said:

"An examination of the terms of the statute discloses that the scope of the inquiry therein authorized is very broad, and would seem to cover almost any kind of an inquiry as to respective rights of claimants under contracts or leases emanating from the office of the commissioner. We make this statement merely by way of suggestion, not desiring to express any opinion thereon."

The appellants, Davidson and Doran, were persons claiming "right, title and interest" in state lands "covered by a (any) lease, executed by the Commissioner." There is no question but that they were, under the literal language of the statute, within its terms in prosecuting the contest before the commissioner. True the instrument under which they claimed the assignment by Enfield, was not an act of the commissioner, but it had been placed with him for approval, and, as they contended, wrongfully withdrawn. If approved, the assignees stepped into the shoes of Enfield and became bound by all of the covenants of the original lease as to this particular acreage. The

original lease was the act of the commissioner and covered the lands in question. And the commissioner's powers were such as to enable him to effectuate in appellants ownership of the original lease as to the acreage covered by the assignment, if he held them entitled to such ownership. If the peculiar nature of the relief sought in a contest were such that the commissioner could not render effectual the decision invoked, a more serious question of his power to proceed would be presented.

In concluding, as we do, that the commissioner had jurisdiction, we do not wish to be understood as laying down any general rule on the application of the statute. The jurisdiction of the commissioner in a particular contest will have to be determined by the facts of such case considered in the light of the statute.

It should be said in passing that, had this case originated under the new Leasing Act (chapter 125, Laws of 1929, sections 132-401 to 132-420, Comp. 1929), exclusive original jurisdiction to entertain the contest would have resided in the district court of Lea county sitting as a court of equity. Section 132-417, Comp. 1929.

There is little, if any, dispute between the parties on the facts as we have related them hereinabove. Controversy does arise, however, over the question of the time which was to be allowed the commissioner within which to approve the assignment transmitted to him by the Fort Worth bank as aforesaid. The appellants concede that an indefinite time, uncertain in its duration, was not contemplated. The appellee contends the agreement was that the assignment should be transmitted for "immediate" approval, and, if not given "immediate" approval, it was to come back to the bank for redelivery to him and the release of the money to the appellants. It should be stated that the lands covered by the lease were becoming valuable for oil and gas development. The contract price for the assignment was $12.50 per acre, and at the time of its return by the commissioner that value had fluctuated to $50 to $75 per acre.

We think the conflicting testimony on what the parties actually agreed upon in this connection may be reconciled.

Both sides to the controversy clearly contemplated that the assignment should be approved in ordinary course of business at the land office. The stipulation for an "immediate" approval, if that term be accepted as expressive of the agreement, certainly did not assume that the commissioner should give precedence to its consideration, or take up and act upon same except as and when reached in the ordinary course of business in his office. No more so did the understanding that, unless approved in ordinary course of business, it should be returned, contemplate any unusual, indefinite, or unexpected delay.

The very nature of the transaction and the subject-matter of the sale argue against the conclusion that any of the parties contemplated or agreed to an indefinite delay in approving the transfer. First, it was to be an immediate cash transaction, the cash in exchange for the assignment. Enfield declined to furnish abstract or give guaranties, presumably because of the delays incident thereto. The appellants agree that he persisted in his assertion that he would not agree to anything that might involve a tieup of his acreage. Then came rumors of a cloud on state oil and gas lease No. 1091. All parties disclaimed knowledge of its nature, but actually, and so far as known to the parties at the time, this cloud had not attained the importance of a suit.

Before hearing the rumor of a cloud on state lease 1091, and as a predicate for carrying out the original agreement for an immediate cash transaction, appellant Doran sent his telegram of inquiry to the commissioner. It tends to corroborate appellee's attitude as testified by him. After referring to negotiations for the assignment, the telegram recited:

"He (Enfield) refuses to furnish abstract and wants cash down immediately on delivery of assignment. Would I be legally safe and is all above in perfect status to make payment to him?"

And so, as a substitute for the original agreement calling for an immediate cash settlement, the transaction through the bank was adopted.

Enfield claims that the plan of handling the transaction through the bank was adopted as a substitute for the im-

mediate cash transaction originally contemplated following a suggestion by one of the parties that, if the assignment came before the commissioner, he might approve same in the face of protests upon realizing that appellants had acted in reliance upon his reply telegram; that the assignment was sent the commissioner in the hope and expectation that he would comply with his telegram and approve. The trial court so found. And there is some testimony by both appellants corroborative of this understanding.

The appellant Doran testified:

"Q. Now, you and Enfield discussed whether or not the commissioner might follow out his telegram and approve this anyway, didn't you? A. I believe we did.

"Q. You told Enfield you and your father were personal friends of Pankey and you thought you could get him to approve it on that telegram? A. No, I don't believe I did. I might have told him I was a personal friend of Pankey's, didn't tell him anything I recall about him approving on that telegram.

"Q. What I am getting at, you thought you and your father might prevail on Pankey to comply with his telegram, if you had gone and acted on it, might get him to comply with it in spite of the notice from Catron, by showing you had acted on his telegram. Isn't that what you told him? A. I might have told him something like that."

The appellant Davidson testified:

"Q. Didn't you and Enfield and Doran discuss the proposition what if Pankey wouldn't approve that on his telegram at once? A. We discussed that after we learned of this litigation. That is the reason I had Doran phone up there.

"Q. You had a telegram from Pankey saying he saw no reason why the assignment should not be approved, didn't you? A. Yes, sir.

"Q. You sent this assignment up there to see if he would follow the telegram? A. Yes, sir."

All of the parties to the transaction. knew at the time of depositing the papers in the bank that a protest of some kind affecting state lease 1091 had been made to the commissioner. All disclaimed knowledge of its nature. They did not understand that it was legal process growing out of any suit, and it was not, for actually no suit was filed and papers served until about a week thereafter. The

agreement of the parties is to be deduced in the light of this knowledge of a protest lodged with the commissioner.

Viewing the evidence as a whole, considering the fact that no suit had been filed, the discussion between the parties on the possibility of the commissioner approving on his telegram in the face of a protest, the admitted demurrer of Enfield to any plan suggested that involved a tying up of his acreage, it is reasonable to infer that the parties forwarded the assignment in the hope that it might be approved in regular course of business before legal obstacles intervened to prevent.

It would seem unreasonable to assume that Enfield, in view of his attitude throughout the negotiations as reflected by the record, would have released the assignment beyond his control to await the outcome of litigation of indeterminate and uncertain duration. The action of the bank in returning the assignment to Enfield upon demand after learning of the suit is of some significance. Davidson was its customer, a depositor in the bank. Enfield was not. If in doubt about its duties under the agreement between the parties, it would be more likely to resolve that doubt against Enfield and in favor of Davidson; and yet, in the face of a protest from the latter against doing so, it redelivered the assignment to the former, justifying its action on the original instructions of the parties.

It is evident even from the testimony offered by the appellants themselves that, if any unusual situation developed preventing approval in regular course, the agreement of sale was to be deemed rescinded, and the assignment and deposit released back to the respective parties. Davidson, one of the appellants, testifying on direct examination, said:

"Q. Was there anything said there to Jeffers (the banker) that if that assignment was not immediately approved it was to be returned? A. No, sir. The word 'immediately' and the rush of that never was mentioned at all. It was put there like notes or instruments are put there every day, to be sent to the Commission and approved and the money paid him, and if it was not approved in the regular course of business, something developed indefinitely, etc., it was to be handed back to Enfield.

"Q. And the money was to come back to you? A. Yes, sir."

When the commissioner was served with papers in a suit tying up this acreage for an indefinite period, a situation intervened which precluded approval of the assignment by him in the ordinary course of business in his office. The appellee thereupon became entitled to its return under his agreement.

Our right thus to review the evidence is asserted by appellants. They call attention to the fact that much of the testimony in this cause was by deposition or on transcript from the proceedings before the commissioner, and cite Gallup Electric Light Co. v. Pacific Imp. Co., 16 N. M. 86, 113 P. 848; Lohman v. Reymond, 18 N. M. 225, 137 P. 375; Warren v. Kornegay, 20 N. M. 225, 147 P. 1197; Bolles v. Pecos Irr. Co., 23 N. M. 32, 167 P. 280; and Bradford v. Armijo, 28 N. M. 288, 210 P. 1070 —to the point that under such circumstances this court will review the findings of the trial court to ascertain whether they are supported by the weight of the evidence. Appellee denies the applicability of such cases, but expressed a willingness to have us make the review.

The cases cited furnish ample authority for reviewing the evidence under the conditions named. It is debatable whether they apply here where the case practically turns on the testimony of the three principal actors, the two appellants and the appellee, who appeared and testified in person at both hearings. But we have resolved the question in favor of a review, have carefully gone over the entire record, and find the evidence to preponderate in support of the judgment rendered by the trial court.

The conclusion thus reached by us renders unnecessary a consideration of other questions raised and argued by appellants.

Finding no error in the judgment appealed from, it will be affirmed, and the cause remanded. It is so ordered.

BICKLEY, C. J., and HUDSPETH, J., concur.

WATSON and PARKER. JJ., did not participate.