59 P.(2d) 356

**In re JUBALA'S ESTATE.**

**SINGH v. JUBALA.**

No. 4137.

Supreme Court of New Mexico.

June 8, 1936.

Rehearing Denied July 13, 1936.

R. R. Posey and R. C. Garland, both of Las Cruces, for appellant.

Sam B. Gillett, of El Paso, Tex., and W. C. Whatley, of Las Cruces, for appellee.

BRICE, Justice.

From a judgment in a proceeding to determine heirship, adjudging that appellee was the lawful wife of Julio Jubala, deceased, the appellant has prosecuted this appeal.

Julio Jubala, also known as Jawala Singh, died in Dona Ana county, N. M., on the 27th day of December, 1932. He had been married to the appellant, Soledad Garcia Jubala, for several years, and had four children. Upon his death, appellee, a citizen of India, filed a petition in the probate court, praying to be adjudged his legal wife and heir. She alleged that she and deceased were married June 3, 1898, in Punjab District, India, and that they had never been divorced. That deceased left India in 1907 and had never returned. Appellant does not contest the fact that deceased and appellee were married in India, but does contend that appellee has not overcome, by clear and convincing proof, the presumption in favor of innocence, morality, and legitimacy that supports the legality of the later marriage between appellant and deceased. The entire probate proceeding was appealed to the district court under section 34-422, Comp.St.Ann.1929, providing for removals to the district court.

Appellee relies largely on depositions of witnesses taken in India to establish her marriage with deceased and that the marriage had not been dissolved. This testimony, while not without serious discrepancies, was held to establish that appellee and deceased were married in India on June 3, 1898, when she was 12 years old and deceased was 11. This date was testified to be the date of such marriage by a half dozen or more Indian witnesses, whose testimony as to the year deceased left India was conflicting and unsatisfactory. Appellee testified that at the date she gave her deposition (December, 1932) she was 45 years old; that she and deceased were married June 3, 1898, cohabited together as husband and wife 6 years, when deceased left for America. Thereafter, in her deposition she stated they went to the house of her father-in-law as soon as married and there she lived with deceased 3 years; that deceased left India for America in 1907; that he had been gone 24 years. If they were married in 1898, they must have lived together 9 years, and not 3 as she testified, though 3 years can be accounted for by her father-in-law, who testified to the effect that they did not cohabit as husband and wife until 3 years after marriage, and so cohabited 3 years after that. This does not account for the other 3 years between her marriage in 1898 and the date (1907) she testified deceased left for America. It would seem that such discrepancies are unusual for a witness so interested. Her own father testified that they had lived together "over two years when deceased left for America." From this testimony it could be inferred that deceased left India in either 1901, 1903, 1907, 1908, or 1909. And, to make it more confusing,

another witness, a resident of California, testified that he and deceased left India in 1910 on the same ship, and that deceased was taken off in China and quarantined for a disease of the eyes. The court seems to have accepted the testimony of this witness, though deceased was in New Mexico in 1909. Still another witness testified that he left India in 1910 and deceased left the year before. All of this testimony was given by appellee's witnesses by deposition, and raises a doubt as to whether there was in fact a marriage, and incidentally any necessity for a divorce, and particularly whether appellee has covered all the time after deceased left India, in carrying the burden of proving the marriage, if it existed, had not been dissolved. The testimony shows that deceased entered America at the Port of Douglas, Ariz., in 1909. One witness testified that deceased spent a year or two in Old Mexico en route to the United States, but he could not have had personal knowledge of this. There is some testimony to the effect that he stopped in China, Japan, and the Philippine Islands, in any one of which countries it may be assumed he could have been divorced from appellant. Assuming that the parties were married as claimed, we are not satisfied that appellee has furnished proof of that convincing character required to overcome the presumption that the first marriage had been dissolved, which we hold necessary under the facts of this case. De Vigil v. Albuquerque & Cerrillos Coal Co. et al., 33 N.M. 479, 270 P. 791; Sy Joc Lieng v. Gregorio Sy Quia et al., 228 U.S. 335, 33 S.Ct. 514, 515, 57 L.Ed. 862.

The evidence is satisfactory that no divorce had been granted after deceased arrived in New Mexico in 1909. A Mexican lawyer testified that no state of the Republic of Mexico had laws under which a divorce could have been granted in, and prior to, 1909. Appellee depends for her proof covering the time unaccounted for on testimony to the effect that no divorce is permissible under the laws of India, that she had never received notice of any divorce proceeding nor been served with process in any such suit; and the testimony of two Indian witnesses who testified that deceased had stated to them just prior to the time he married appellant that he had a wife in India, but that was far away and he was going to marry in New Mexico. It is true these witnesses testified at the trial, and the court witnessed their demeanor while testifying, and could better judge of their credibility than this court; nor is it at all probable that deceased would have made such statements had they been false; but such testimony can be given without danger and cannot be disproved—the man who, it is claimed, made the declaration is dead. If the testimony given by deposition had been satisfactory, this evidence might, with more reason, have been accepted as proof that appellee and deceased had not been divorced; but it, with its frailty, must be considered along with all the other testimony in the case, and, when so considered, the proof is not so clear, strong, and unequivocal as

to produce a moral conviction in our minds that the marriage in India, if it ever existed, was a bar to a legal marriage in New Mexico. This, we hold, should be required in this case, in which appellee testified she had not heard directly from deceased for twenty years, made no attempt to communicate with him, though she heard of him at times, asserted no claim or right of a wife during his lifetime, but her interest, or that of others ostensibly in her behalf, became apparent only when the opportunity arose ater his death to claim a community interest in an estate she had no part in earning. In the meantime he had married appellant and reared a family of four children.

While the facts in the case are not so strong in appellant's favor as that in favor of the Philippine wife in Sy Joc Lieng et al. v. Gregorio Sy Quia et al., supra, yet we think the language in the opinion in that case, which we quote, applies here:

"In these circumstances every presumption was in favor of the validity and good faith of the Philippine marriage, and sound reason required that it be not impugned and discredited through the alleged prior marriage save upon proof so clear, strong, and unequivocal as to produce a moral conviction of the existence of that impediment. The conflicting testimony, isolatedly considered, did not measure up to this standard, and clearly it did not do so if proper regard was had for the probative force of the conduct of all the parties concerned during the many intervening years.

Then, too, the lips of Sy Quia and Yap Puan Niu had been sealed by death, and this, with the long interval of time, gave unusual opportunity for the use of fabricated testimony, the untruth of which it would be difficult to expose.

"Giving due effect to these considerations, we cannot say that the Supreme Court of the Philippines erred in holding that the Chinese marriage was not adequately proved. Indeed, we regard the evidence as not producing a moral conviction of the existence of that marriage, but as leaving the issue in serious doubt. The decree is accordingly affirmed."

The case will be reversed, with instructions to deny appellee's claim and enter judgment for appellant, finding appellant is the legal wife of deceased and entitled as such to that portion of his estate allowed by law. It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.

## On Motion for Rehearing.

### BRICE, Justice.

Appellee urges in her motion for rehearing that the court erred in holding that the presumption of the validity of the marriage between appellant and Julio Jubala could not be overcome in the circumstances shown by the evidence in this case except by evidence so clear, strong, and unequivocal as to produce a moral conviction in the minds of the court that the obstacle

of the previous marriage existed at the time of such marriage; and in support of this position appellee quotes that portion of section 44, 18 R.C.L., Title, Marriage, that appears at page 419, in which among other things it is stated: "Therefore in case there is a conflict of presumptions it would appear more reasonable that that one should yield which has the least probability to sustain it rather than that the one in favor of innocence and of the validity of the subsequent marriage should prevail."

But the trouble with this authority is that appellee did not finish the quotation. If her counsel had turned to the next page and continued to quote from the same paragraph the ending would have been as follows: "The presumption, which increases in strength with the lapse of time, can only be overcome by clear and convincing evidence to the contrary, and the evidence to overcome it must be especially strong after the lapse of a great many years. To overcome the prima facie case established by the showing of a subsequent marriage, proof of a former marriage is required, and also evidence from which it may be concluded that it has not been dissolved by death or divorce. Mere proof of a prior marriage and that one party had not obtained a divorce is not sufficient, for the other might have obtained such divorce and left him or her free to contract the second marriage."

We are satisfied that the rule of law stated should apply in this case as appellee's claim is based on an alleged marriage entered into 34 years before the death of Julio Jubala and the parties had not lived together at that time for at least 24 years, if ever.

It is argued that we "cannot consider for any purpose the question of the fact of the marriage between appellee Nami Singh and Julio Jubala" because it is not an issue in the case on appeal in that appellant requested the court to find that such marriage had occurred; likewise it is urged that we cannot question the date that deceased left India because the appellant requested the court to find that date to be the year 1907. Appellant would certainly be bound by such requests if that question was before us, but we are not bound to the extent (if at all) that we cannot consider all the testimony in the case that bears upon the crucial question of whether there was any obstacle to the marriage between Julio Jubala and the appellant, and particularly that going to the credibility of the witnesses; for at least it is not agreed that any previous marriage existed at the time appellant and Julio Jubala were married. We are as capable as the district judge to determine the value of testimony given by deposition, and findings of the court based thereon are not binding on us.

We have expressed some doubt as to whether appellee and Julio Jubala were ever married at all because of the unsatisfactory character of the testimony of the Indian witnesses. They had remarkable memories for dates, but were strangely deficient in matters of much more importance and which ordinarily would not

be forgotten. For instance, each of the witnesses, after 34 years, could remember that the marriage ceremony in question occurred on the 3d day of June, 1898, and that the deceased left India in 1907; yet appellee testified just as positively that she had lived with her husband 3 years when he left India and that she went to live with him immediately after marriage; her father-in-law testified that the deceased left India 6 years after the marriage; and appellee's father testified that she went immediately to the home of the deceased and had lived with him over 2 years when he left for America. It is unnecessary to point out the discrepancies in the testimony of other witnesses because these three were the most interested. If he left India in 1907, appellee and deceased had lived together 9 years and she was 21 years old at that time. The remarkable feats of memory of all the witnesses with reference to the manner of the performance of the ceremony and minute details in connection therewith and who was present, given after 34 years, together with the recollection of dates mentioned would, one would think, indicate intelligence enough to also remember (particularly appellee) the length of time appellee and her husband lived together. The categorical answers as to the date of an occurrence after a long lapse of time are not ordinarily as credible testimony as circumstances showing a different date.

The matter of the date deceased left India is extremely important, because appellee must account for the time interven-

ing between such date and when the deceased arrived in New Mexico, to satisfy the minds of the court that no divorce had been obtained by him in this interval. One witness testified deceased was in Mexico for a year, but the evidence clearly shows this to be the "'rankest kind of hearsay" (to use appellee's language as to another matter) as the witness also testified he first saw the deceased in 1930 after he had come to New Mexico. There is no substantial evidence to show the whereabouts of deceased from the time he left India (whatever date that may have been) until he arrived in New Mexico. No attempt is made to establish that he had never been divorced except the testimony of a Mexican lawyer that he could not have been divorced in the Republic of Mexico and the testimony of three Indian witnesses, each of whom testified that deceased had stated to him that he had a wife in India. The blanket character of this testimony would cover all deficiencies if accepted by us without question. Courts are divided as to the admissibility of such testimony for any purpose; but assuming that it was correctly admitted in evidence, we are not inclined to accept it as being of the character we have held must be produced in this case to overcome the presumption of the legality of the second marriage.

█ We are advised by appellant that "this court cannot and should not weigh conflicting evidence and should only examine it for the purpose of determining whether the same was substantial evidence," and appellee "is wholly unable to

understand" upon what authority we have undertaken to weigh the evidence in this case. We call appellee's attention to Davidson v. Enfield, 35 N.M. 580, 3 P.(2d) 979, from which we quote the second syllabus as follows: "Where much of the testimony is by deposition or a transcript of testimony of absent witnesses taken at a former hearing before another tribunal, this court may review the entire record to determine whether the judgment rendered by the trial court is supported by a preponderance of the evidence."

The motion for a rehearing will be denied.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.