**73 P.2d 805**

**STATE v. EYCHANER.**

No. 4278.

Supreme Court of New Mexico.

Nov. 15, 1937.

George A. Shipley, of Alamogordo, for appellant.

Frank H. Patton, Atty. Gen., and Fred J. Federici, Asst. Atty. Gen., for the State.

SADLER, Justice.

The defendant was convicted before the juvenile court of Otero county, under 1929 Comp. § 35-4110, of committing certain acts tending to cause or encourage juvenile delinquency of two minor females under the ages of eighteen years, to wit, of the ages of eight and six years, respectively. The acts were shown to have been committed on or about March 7, 1936. The defendant prosecutes this appeal for a review of the sentence pronounced upon him.

Although not raised by the parties, a question of our jurisdiction to entertain this appeal has suggested itself. Of course, when a question involving jurisdiction of the subject-matter arises, whether raised by the parties or sensed by the court, the first duty is to pause, consider, and determine the matter before approaching the merits. Davidson v. Enfield, 35 N.M. 580, 3 P.2d 979. Entertaining doubt and being without assistance from counsel on the question, it was presented to them with a request that each file a brief presenting his views and argument thereon. Such briefs were duly filed and the point is now before us for decision.

Briefly put, the question is: The juvenile court being a court inferior to the district court, does an appeal lie directly from that court to the supreme court? The considerations prompting the inquiry will be presently stated. Both counsel seem to agree that if the 1921 amendment (L. 1921, c. 87) to the juvenile court act is constitutional, there is no right of appeal in this case. The defendant, however, challenges constitutionality of the 1921 act on several grounds.

Now, as to the jurisdictional question: Article 6, § 1, of our Constitution provides: "The judicial power of the state shall be vested in the senate, * * * a supreme court, district courts, probate courts, justices of the peace, and such courts inferior to the district courts as may be established by law from time to time * * * including juvenile courts."

Section 2 of said article provides: "The appellate jurisdiction of the supreme court shall be coextensive with the state, and shall extend to all final judgments and decisions of the district courts, and said court shall have such appellate jurisdiction of interlocutory orders and decisions of the *district courts* as may be conferred by law." (Italics ours.)

If the doctrine found in the old Latin maxim, expressio unius est exclusio alterius, be applicable, and we think it is, the Legislature could not in the face of article 6, §·2, provide for an appeal directly to the Supreme Court from judgments of the probate court and justices of the peace. The

correctness of this conclusion is supported by the provisions of article 6, § 13, reading: "The *district court* shall have * * * appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts." (Italics ours.)

Any effort by the Legislature to provide for appeals directly to the Supreme Court from judgments of courts inferior to the district court would seem to circumvent the provisions of article 6, § 13. In enacting the juvenile court act, the Legislature has purported to proceed in accordance with article 6, § 1, by establishing "courts inferior to the district court * * * *including juvenile courts.*" (Italics ours.)

In State v. Florez, 36 N.M. 80, 8 P.2d 786, we held that section 35-4114, here relied on as conferring a right of appeal, applied only to persons convicted of contributing to juvenile delinquency. The constitutionality of the statute as authorizing an appeal directly to this court was not involved or considered.

Our conclusion is that in so far as section 35-4114 applied to the juvenile court act (Laws 1917, c. 4) as amended by L.1921, c. 87, purports to confer a right of appeal directly from the juvenile court to this court, if it does, it violates the provisions of the Constitution hereinabove mentioned and is accordingly invalid.

█ In this connection it should be said that, when enacted, 1929 Comp. § 35-4114 (L.1917, c. 4, § 14), did not purport to grant an appeal directly to the Supreme Court from an inferior court. Both parties agree in the correct conclusion that L.1917, c. 4, does not create nor intend to create the juvenile court as a separate tribunal inferior to the district court. Instead it expressly gave to the district court in each county exclusive original jurisdiction over juvenile delinquents and over those contributing to juvenile delinquency as well as over all matters arising under said act. L.1917, c. 4, § 2. An appeal was then authorized from all final judgments rendered under the provisions of section 10 of the act (convictions of contributing to juvenile delinquency) "in the same manner as *other final judgments from the district court.*" (Italics ours.) L.1917, c. 4, § 14; (§ 35-4114.)

Clearly this provided for an appeal from a judgment of the district court. It is only in an attempted application of the appeal section of the 1917 act to the situation appearing after the amendment of 1921 that defendant finds any basis for even claiming that a right of appeal exists or was intended. Perhaps the Legislature, forgetful for the moment that it was creating the juvenile court as a court inferior to the district court, thought the appeal section might still serve its original purpose. If so, the conclusion was erroneous for the reasons above stated. On the other hand, it may deliberately have chosen to provide no appeal, merely failing through inadvertence to repeal the appeal section in clarification of such intention. Whatever the fact, the legal effect is that no appeal exists from the judgment complained of. Hence, we are

without right to grant the review here sought unless error in such conclusion is established by consideration of the constitutional questions raised, if we have any right to consider them.

■■■ Defendant's counsel challenges the correctness of such conclusion by questioning on various grounds the constitutionality of L.1921, c. 87. We are asked so to declare; find the amendment of 1921 creating the juvenile court invalid; then indulge the assumption that, being without power to sit as a juvenile court, the proceeding must have been conducted under L.1917, c. 4, by the district court, juvenile division. Thus, having been brought by a devious route into the district court, an appeal lies under the express language of section 35-4114 (L. 1917, c. 4, § 14).

In his first approach to the subject, defendant's counsel suggests, if he does not seriously argue, that this prosecution was actually tried by the district court of Otero county rather than by the juvenile court of said county. The suggestion rests on the fact that in some instances in the transcript the term "district court" instead of "juvenile court" is employed, as where the court reporter certified the bill of exceptions as reporter of the district court, the signature of the judge to bill of exceptions as district judge, etc. This inadvertent use of an improper title cannot overcome the obvious fact that the case was tried before the juvenile court. The complaint was so captioned and the judgment was signed by the judge of the juvenile court as such. Under

the express terms of the 1921 act, the district court had no jurisdiction to try the case, whereas the juvenile court had exclusive jurisdiction so to do. The record abounds with proof that the case was being tried by the juvenile, and not by the district, court.

The effort to characterize this trial as one occurring before the district court of Otero county rests upon the fortuitous circumstance that the district judges are made judges of the juvenile courts. The weakness of the contention is exposed when we suppose someone other than the district judge to be sitting as judge of the juvenile court. No one would contend in such circumstances that, because of some agreed invalidity denying even the existence of the juvenile court, the case must be deemed to have been tried by the district court whose jurisdiction had never been invoked. If it be kept clearly in mind that officially the district judge and the juvenile judge are as separate and distinct in capacity and identity as if the two offices were filled by different individuals, the fallacy of an attempt to place this trial and judgment in the district court at once appears.

The Attorney General plausibly argues that this is not a proper proceeding in which to raise or pass upon the constitutional questions presented by defendant's counsel. Planting himself on the safe premise that the Legislature has an express grant of authority under the Constitution to create the juvenile court as a court inferior to the district court, he argues that

the first part of the 1921 act (Comp.Laws 1929, § 35-4102) providing that "there is hereby established in each county of this state a court to be known as the 'juvenile court of ———— county, New Mexico,'" is not open to successful constitutional challenge; that there is thus created a de jure court, certainly a de facto court, with a judge presiding who possesses at least de facto status; and that the mere fact that the statute is unconstitutional, if it is, because (as contended) of the selection of the district judge as ex officio incumbent of the office of juvenile judge, or because (as contended) of the salary attached to such office amounting to increased emoluments for his services as district judge, or because (as contended) of incompatibility between the duties of the two offices, gives unto defendant no right in this proceeding to a hearing on such matters.

The position of the state on this phase of the case is reflected by the following excerpt from its supplemental brief submitted at oral argument, to wit:

"This brief is supplemental to appellee's Special Brief heretofore filed at the request of the court and will merely stress further the proposition presented at page 10 of said Special Brief dealing with the matter of de facto courts and de facto judges, and is being prepared in anticipation that the court will grant leave that the same be filed at the time of oral argument.

"A de facto judge is defined to be as follows: 'A judge de facto is one acting with *color of right* and who is regarded as, and has the reputation of, exercising the judicial function he assumes.' 33 C.J. 925, citing cases in footnote 51.

"An unconstitutional statute is sufficient to give color of right.

" 'An unconstitutional statute is sufficient to give color of right or authority to elect or appoint a judicial officer, and a person elected or appointed by authority of such a statute is a de facto judge.' 33 C.J. 925, citing cases in footnote 59.

"The following statements of law are also found in Corpus Juris:

" 'A judge de facto is a judge de jure as to all parties except the state, and his official acts, before he is ousted from office, are binding on third persons and the public. His right to hold his office can be questioned only in proceedings, regularly instituted for that purpose, *to which he is a party,* in the form provided by law; it cannot be attacked in a collateral proceeding. Nor can his title be determined in an action tried before him; nor in certiorari proceedings; *nor on an appeal.* The rules apply, although the person acting as judge is incapable of holding the office, and irrespective of the question whether he was properly elected, or whether he is holding two incompatible offices.' 33 C.J. 933.

" 'A judge de facto, as against all parties but the commonwealth, is a judge de jure; and he is competent to do whatever may be done by a judge de jure. In passing upon the validity of official acts, inquiry into the title to the office of the party acting

therein may be pursued far enough to show whether he is a de facto officer. The official acts of a de facto judge, before he is ousted from office, are valid and binding at least, as far as the public and third persons are concerned, they are not ipso facto void, or open to question upon jurisdictional grounds, or subject to collateral attack.' 33 C.J. 971.

"That portion of Section 1, Chapter 87, Laws of 1921, establishing and creating juvenile courts, is clearly in accord with Article VI, Section 1 of the New Mexico Constitution, irrespective of whether or not the latter part thereof, designating the judge and allowing the salary, be unconstitutional as insisted by appellant. We submit we have here an act creating a de jure court. It is at least a court 'recognized by law.' State v. Blancett, 24 N.M. 433, 174 P. 207. Juvenile courts have been consistently 'recognized' by this court. See Stout v. City of Clovis, 37 N.M. 30, 33, 16 P.2d 936, where this court said: '* * * we do find the Legislature pursuant to its constitutional power has established "juvenile courts."'

"Even if it be assumed, without conceding, that the invalidity of the last portion invalidates the whole of Section 1, Chapter 87, on the theory that the section is inseparable and that the Legislature would not have enacted the first part without enacting the second part, even so, the first portion has as least created a de facto juvenile court or at least one 'recognized by law', and the last part thereof has created a de facto judge of the juvenile court under color of right."

The proposition is then advanced that the legality of a de facto court can only be challenged in a direct proceeding by the state for that purpose, citing Burt v. Winona R. Co., 31 Minn. 472, 18 N.W. 285, 289; Leach v. People, 122 Ill. 420, 12 N.E. 726; Donough v. Dewey, 82 Mich. 309, 46 N.W. 782; Com. v. McCombs, 56 Pa. 436; Gardner v. Springfield Gas Co., 154 Mo.App. 666, 135 S.W. 1023.

It is then asserted that: "Even if the office of judge of the district court and judge of the juvenile court be incompatible, the district judge acting in both capacities is at least the de facto judge of the juvenile court as such, and the validity of the law designating the district judge as judge of the juvenile court cannot be questioned in a proceeding such as this wherein such a judge is not a party. Commonwealth v. Taber, 123 Mass. 253, and State v. Blancett, 24 N.M. 433, 124 P. 207. See also in this connection Haymaker v. State ex rel. McCain, 22 N.M. 400, 163 P. 248, L.R.A. 1917D, 210."

And, finally, this court is quoted from the opinion in State v. Blancett, 24 N.M. 433, 174 P. 207, 209, as supporting authority as follows: "That the title of the officer de facto, and the validity of his acts, cannot be collaterally questioned in proceedings to which he is not a party, or which were not instituted to determine their validity."

■ This argument is intriguing. However, we find it unnecessary to pursue it or to write dicta thereon. The sole question now before us is one of our jurisdiction to entertain this appeal. Appeals are statutory. The constitutional provision which confers appellate jurisdiction on the Supreme Court does not purport to grant a litigant a right of appeal. State v. Chacon, 19 N.M. 456, 145 P. 125; Jordan v. Jordan, 29 N.M. 95, 218 P. 1035; Los Alamos Ranch School v. State, 35 N.M. 122, 290 P. 1019. Hence, unless we can point to a valid statute conferring the right of appeal, we are without jurisdiction to review this judgment on appeal. This is true irrespective of whether L. 1921, c. 87, is vulnerable to the constitutional assaults directed against it.

■ We already have held that the statute relied upon as giving the right of appeal is unconstitutional if so construed. No other statute purporting to authorize an appeal existing, no right thereto exists. The mere injection of constitutional questions into a proceeding, either in the lower court or, as here, for the first time in the Supreme Court, cannot afford a review by appeal where none otherwise exists.

Finding ourselves without jurisdiction to entertain the appeal, it will be dismissed; and it is so ordered.

HUDSPETH, C. J., and BICKLEY, BRICE, and ZINN, JJ., concur.