McBURNETT, by next friend, *v.* WARREN, director, etc.

No. 17485. ARGUED JUNE 11, 1951—DECIDED JULY 10, 1951.

*Harris, Henson & Gower, Hicks & Culbert,* and *D. L. Stanfield,* for plaintiff.

*Eugene Cook, Attorney-General, Lamar Sizemore, Assistant Attorney-General, M. H. Blackshear Jr., Deputy Assistant Attorney-General,* and *Robert Hicks,* for defendant.

ATKINSON, Presiding Justice. (After stating the foregoing facts.)  It is contended by the petitioner that the writ can be issued in a county other than the county in which a person is physically located and being unlawfully deprived of his liberty, and he cites *Crowell* v. *Crowell,* 190 *Ga.* 501 (9 S. E. 2d, 628), which is followed by *Fielder* v. *Sadler,* 193 *Ga.* 268 (18 S. E. 2d, 486). In the *Crowell* case, by a divorce decree of Treutlen County the custody of a four-year-old child was awarded to the mother six months and to the father six months.  When the six months with the mother expired, she was a resident of Fulton County and declined to deliver the child to the father.  He instituted habeas corpus proceedings. She filed a plea to the jurisdiction, and testi-

fled that she had possession of the child when the writ was issued, but now the child was in Early County with its grandmother where she took it, and that she was acquainted with the terms of the decree of Treutlen Court, and knew the six months' custody awarded her had expired. The trial judge sustained the plea to the jurisdiction. This court reversed that judgment. The opinion cites decisions from other jurisdictions to the effect that, where a person within the jurisdiction of the court is shown to have once had the legal custody of a child and has since parted with it without legal authority and caused it to be moved beyond the jurisdiction of the court, such is no answer to proceedings to compel its production on habeas corpus unless it is absolutely impossible to produce the child. In the decision it is said: "On the precise question here involved this court has never ruled; but, both on principle and authority, we hold that under the facts of this record the illegal detention was at the place of the residence of the child's mother, the respondent, who has the custody and control, and, in legal contemplation, the possession." This was a full-bench decision.

The writ of habeas corpus in some form existed prior to Magna Charta. A recitation of its history will be found in *Simmons* v. *Georgia Iron & Coal Co.*, 117 *Ga.* 305 (43 S. E. 780). Also a discussion of its purposes, together with a copy of the Statute of 31 Charles II, enacted in 1678, may be found in Prince's Digest of the laws of Georgia (1837, page 919). It is not a writ limited to a single purpose. There are various types of the writ, each designated to bring a person to court for some purpose. Where a person claims that he is unlawfully being denied his liberty by another, the writ is designated as the writ of habeas corpus ad subjiciendum, and this was the type of writ before the court in *Simmons* v. *Georgia Iron & Coal Co.*, 117 *Ga.* 305, (supra), and from that decision we quote: "The proceeding is sometimes characterized as a 'cause' or 'action,' but erroneously so; and it has been called a civil or criminal proceeding, according to whether the person is held in custody on a criminal charge or by private restraint. While instances may arise where it is important to determine whether it is a civil or criminal proceeding, it can never be accurately characterized as a technical suit or action. See, in this connection, 15 Am. & Eng.

Enc. L. 157—8; 2 Spell. Ex. Rel. § 1161. It may be analogized to a proceeding in rem, and is instituted for the sole purpose of having the person restrained of his liberty produced before the judge, in order that the cause of his detention may be inquired into and his status fixed. The person to whom the writ is directed makes response to the writ, not to the petition. 9 Enc. P. & P. 1035. When an answer is made to the writ, the responsibility of the respondent ceases. See, in this connection, Barth v. Clise, 79 U. S. (12 Wall.) 400. The court passes upon all questions, both of law and fact, in a summary way. The person restrained is the central figure in the transaction. The proceeding is instituted solely for his benefit. It is not designed to obtain redress against anybody, and no judgment can be entered against anybody. There is no plaintiff and no defendant, and hence there is no suit in the technical sense." Also on page 315 it is said: "The place of detention fixes the jurisdiction of the habeas corpus judge, without reference to the residence of the person detaining," and further, on page 320 it is said: "It should be directed to the individual having the actual physical custody and control of the person." Code § 50-103 provides that the petition for writ of habeas corpus be presented to the judge of the superior court of the circuit where the illegal detention exists.

The awarding of the custody of children in divorce cases is relatively recent. Our first divorce law was approved December 1, 1802 (Ga. L. 1802, p. 69). From then until 1833 divorce judgments were not effective until sanctioned by an act of the General Assembly. In 1833, by an amendment to the Constitution of 1798 (Ga. L. 1833, p. 47), divorces became effective on two concurrent jury verdicts. We find no provision in Cobb's Digest for awarding custody of the children. This first appeared in the Code of 1863, § 1685, which section has been carried forward in all subsequent Codes and now appears as § 30-127 in the Code of 1933.

There is a clear distinction between a writ to acquire freedom from a person who is illegally depriving one of his liberty, and a writ to secure the custody of a child awarded in a divorce decree. In the former the issue is lawful or unlawful imprisonment. In the latter no imprisonment or liberty is involved,

but only the question of who shall have the custody of the child. This distinction has been recognized in New York Foundling Hospital v. Gatti, 203 U. S. 429 (27 Sup. Ct. 53, 51 L. ed. 254). Other distinctions could be drawn. We are cited to no case, based on the restraint of personal liberty, where it was held that the writ could be issued in a jurisdiction other than where the actual physical illegal detention existed, nor have we been able to find one.

The applicant is confined in the State Penitentiary in Tattnall County, and to test the legality of that detention proceedings must be brought in that county against the one who there has the physical control of his confinement.

Accordingly, the trial judge did not err in sustaining the plea to the jurisdiction and in dismissing the writ.

*Judgment affirmed. All the Justices concur.*