122 So.2d 807 (1960)
George T. CLARK, Frank B. Dowling, W.F. Blanton, As Judges of the County Court in and for Dade County, Florida, and the Administrator of Jackson Memorial Hospital, Appellants,
v.
STATE of Florida ex rel. Kate Rubin, Appellees.
No. 59-673.
District Court of Appeal of Florida. Third District.
September 12, 1960.
*808 Darrey A. Davis, County Atty., and Wm. W. Gibbs, Asst. County Atty., Miami, for appellants.
Stanley S. Stein and Julius J. Perlmutter, Miami Beach, for appellees.
CARROLL, CHAS., Judge.
This is an authorized appeal, by respondents in a habeas corpus action in the circuit court, from an order discharging the petitioner from the custody to which she had been committed by the county judge.
In the proceeding before the county judge, under § 394.22, Fla. Stat., F.S.A., relating to adjudication of persons mentally or physically incompetent, the county judge had made an order under subsection 12 thereof "certifying" the petitioner to Institute-Jackson Memorial Hospital, Miami, Florida, for care and treatment and observation for a period not to exceed 90 days, upon finding her to be temporarily incompetent. The complete order as entered by the county judge was as follows:
 "In the County Judges' Court
 in and for Dade County,
 Florida
 "In Re: | File No. 10304
 }
 Kate Rubin | Certification to Hospital
"This Cause came on for hearing before the Court upon inquisition of incompetency of Kate Rubin, and the Court having heard the testimony of the witnesses appearing at the said hearing and having considered the report of the Examining Committee heretofore appointed by this Court to ascertain *809 the mental and physical condition of the said Kate Rubin, and it appearing unto the Court that the said Kate Rubin is temporarily incompetent and, through specialized care and treatment, may be restored to competency; upon consideration thereof, it is now therefore:
"Ordered and Adjudged that the said Kate Rubin be, and she is hereby certified to Institute-Jackson Memorial Hospital, Miami, Florida, for admission to Institute, Jackson Memorial Hospital, Miami, Florida, there to be subject to intensive care, treatment, and observation for a period not to exceed 90 days as provided by law, and for such further and other disposition as may be provided by law.
"Done and Ordered in Chambers at Miami, Dade County, Florida, this 24th day of September, 1959.
 (County)
 "George T. Clark (Judge )
 (Seal )"
The statute under which the petitioner was ordered temporarily confined in the hospital, § 394.22(12), Fla. Stat., F.S.A., as amended and enlarged in 1959 (Ch. 59-42, § 1) is entitled "Temporary hospitalization and confinement; procedure for adjudication of mental incompetency; discharge; temporary guardian." That section of the statute covers several pages and it would unduly lengthen this opinion to quote it. The statute provided for the action which was taken by the county judge; provided that a party so committed or "certified" to a hospital could be discharged by the head of the hospital when the staff of the hospital regarded him as competent; or when within a certain period after such a commitment, the hospital staff is of the opinion that the party is mentally incompetent and should be retained longer, further proceedings are outlined to be had before the county judge; further determinations and procedures by the head of the hospital and by the county judge are specified depending upon the subsequent condition of the party; and the guardian provided for in that section of the statute is a temporary guardian to be appointed by the county judge, of the property of the party, but not of the person of such party unless such party thereafter shall be adjudged incompetent.
On October 15, 1959, approximately three weeks after she was ordered into custody of the hospital by the county judge, the petitioner filed in the circuit court a petition for writ of habeas corpus. She named as respondents the three judges of the county judge's court and the administrator of Jackson Memorial Hospital. In passing it should be noted that the person to be named as the respondent in a habeas corpus action is the party holding custody and who is in a position to produce the petitioner physically.[1] In this instance that was the administrator of the hospital. The judge or judges of the court who entered the order as a result of which the petitioner was placed in the custody of the hospital should not have been made respondents.[2]
The writ was issued on October 15, 1959, and made returnable the next day. An answer and motion to quash were filed by the county attorney on behalf of the respondent hospital administrator. The answer disclosed that the petitioner was being held pursuant to the county judge's order shown hereinabove.
On October 16, 1959, the court heard testimony of a Dr. Michael M. Gilbert and then the hearing was recessed to October 20. After being identified and qualified, the testimony given by the doctor on direct examination was as follows:
"Q. In narrative fashion, Doctor, will you tell the Court what examination you made of Kate Rubin and what *810 your findings were, if any? A. I examined Mrs. Rubin at the Jackson Memorial Hospital on September 22, 1959, at which time I reviewed the hospital records. My examination revealed that she was suffering from manic depressive reaction and was in partial remission. At the time I saw her she was in a fairly good state of remission though she required some additional treatment. I felt that she should or could be treated as an out-patient with psychotherapy and medication.
"Q. What was your diagnosis? A. Manic depressive reactions are not so difficult to handle. It is a condition something like diabetes, which is never cured, but it certainly can be cured. I have many patients suffering from this condition for many years  housewives, mothers and businessmen, and they get along without difficulty so long as they are under some supervision.
"Q. Take the patient Kate Rubin. Is it your opinion that her incarceration under lock and key might have some effect on her condition? A. Generally speaking, the idea of her being locked up in a mental ward would disturb a patient and cause a lot of emotional distress.
"Q. Do you know how much it costs per day for the treatment of Mrs. Rubin at the Jackson Memorial Hospital? A. Not exactly. I think it is $26. a day, plus medication.
"No further questions.
The cross-examination was equally brief, viz.:
"Q. Doctor, how long did you spend with Mrs. Rubin on the occasion you recently examined her? A. I didn't time it; probably an hour and a half.
"Q. Did you make any report to County Judge Clark in connection with this particular individual? A. Yes, I testified on September 24th at a hearing before the County Judge.
"Q. Had you ever seen, examined or treated this woman before? A. No.
"The Court: How old is she, Doctor?
"The Witness: I don't have any clinical records with me. I think she is in her fifties.
"The Court: This certificate says she is 54. Is that about right?
"The Witness: Yes.
"Q. I take it that it is your position that you will confirm the testimony you gave before Judge Clark? A. Yes.
"The Court: What was that testimony?
"Mr. Gibbs: It has not been transcribed. I believe Mr. Colman was the Reporter at the hearing.
"The Court: Maybe the doctor can remember it.
"The Witness: It was substantially the same as I have given here.
"The Court: Is it your recommendation that she be incarcerated?
"The Witness: I feel that she should be treated as an out-patient.
"The Court: Why was she incarcerated, if you know?
"The Witness: The report was read at the trial under Dr. Corwin's signature, but, as I understand the procedure, the Resident probably examined her and wrote the report."
The hearing was resumed on October 20. No further testimony was taken, and the matter was argued by counsel. Thereafter the court entered its judgment discharging the petitioner from the custody of the hospital, and appointing a guardian for the petitioner, after making the following statement in the record:

*811 "The Court: I am not passing on Judge Clark's jurisdiction. I am going to grant the writ on the testimony of Dr. Gilbert who testified here the other day. He testified that she would be better off if her custody was in some individual rather than in some institution. It is entirely on that basis that I grant the writ. Judge Clark still has jurisdiction of the entire matter. You may draw an order."
The order entered thereupon by the circuit judge in the habeas corpus action was as follows:
"This matter having come on regularly upon the respondent's return to a petition for a writ of habeas corpus herein, wherein petitioner alleged that she was competent and not dangerous to herself or to the general public within the meaning of the statute authorizing confinement, and expert testimony of medical witnesses support such petition, and the Court having heard argument from counsel, and being fully advised in the premises, does now:
"Order, Adjudge and Decree that petitioner, Kate Rubin, is entitled to be restored to her liberty at once, and it is;
"Ordered, Adjudged and Decreed that the Administrator of Jackson Memorial Hospital of Miami, Florida, and the County Judges in and for Dade County, Florida, immediately release said Kate Rubin from the custody into custody of Paul M. Brunn, who is hereby appointed Guardian ad litem of the person of said Kate Rubin, and in his absence custody granted to her attorneys of record until his return."
On this appeal by the respondents four points were raised. Three may be grouped as a contention that the circuit court, not having any supervisory or appellate jurisdiction over the county judge's court, could not release the petitioner in absence of a showing of illegality of the county judge's order committing her in custody of the hospital. The other point questioned the circuit court's authority to appoint the guardian.
Prior to 1946, when the circuit court had concurrent jurisdiction with the county judge for such matters and also had supervisory and appellate jurisdiction thereof, the propriety as well as the legality of such an order of commitment or guardianship by the county judge could be tested on habeas corpus in the circuit court. Ex parte Hansen, 120 Fla. 333, 162 So. 715; In re Freeman's Petition, Fla. 1955, 84 So.2d 544, 548; 11 F.L.P., Habeas Corpus, § 24.
Under the law as presently constituted, jurisdiction for commitment such as was made by the county judge in this instance is conferred on the county judge. §§ 394.22 and 744.06, Fla. Stat., F.S.A. Concurrent jurisdiction therefor is not given by law to the circuit court, which, when it acts in such matters may do so only in the absence and in the capacity of the county judge. See § 394.22(1), (4) and In re Freeman's Petition, supra. Nor does the circuit court have any supervisory or appellate jurisdiction over such orders of the county judge or county judge's court. Appellate review thereof is now reposed in the district courts of appeal, under Art. V, § 5(3), Fla. Const. See also § 744.06(2), Fla. Stat., F.S.A.
From the petition, which challenged the propriety as well as the legality of the county judge's order, and from the evidence acted on in the circuit court and the statement of the latter court, it is clear that the judgment in habeas corpus was not granted on a ground or finding of illegality or that the order of the county judge was void, but rather on consideration of the propriety of the order. From the record it is not entirely clear whether the circuit court proceeding was a trial de novo, as though entitled to exercise original or concurrent jurisdiction with the county judge, or whether the result was reached as an *812 attempted exercise of appellate jurisdiction reversing the county judge's commitment or guardianship order. Whichever is regarded as the basis of the circuit court's action in the habeas corpus proceeding, that court was without jurisdiction.
The circuit court had the unquestionable right to cause a writ of habeas corpus to issue to inquire into the cause of the detention of the petitioner in the hospital. The circuit court would have jurisdiction to discharge the person so held in custody if it should be made to appear that the retention was without jurisdiction or that the order under which it was made was void. But where a person is held in custody under an order made by another court in a proceeding for which the circuit court does not have original jurisdiction or concurrent jurisdiction, and as to which order the circuit court has no supervisory or appellate jurisdiction, the circuit court is not empowered through a proceeding there in habeas corpus to discharge the petitioner for reasons other than illegality of the order but merely upon a determination of irregularity, insufficiency in form or substance or for other matters going to the propriety of the order. See Frederick v. Rowe, 105 Fla. 193, 140 So. 915; State ex rel. Perky v. Browne, 105 Fla. 631, 142 So. 247; 11 F.L.P., Habeas Corpus, § 12 et seq. By doing so in this case, the circuit court attempted to assert and exercise supervisory and appellate jurisdiction of the order of the county judge involved which it did not have, and which jurisdiction was lodged exclusively in this court.
It is argued by the appellee that the questions raised are moot as to her, since the 90 day period of custody as initially ordered by the county judge ended prior to the hearing on this appeal from the circuit court's order in habeas corpus discharging the petitioner from such custody. Appellee then suggests that this court should not decide the question or questions presented. The questions may be moot as to the appellee, but there are other parties to the appeal as to whom the case is not moot. Although their joinder was unnecessary, the county judges of Dade County were made parties to the case, which is here on their appeal as well as on appeal by the hospital administrator. The order or judgment appealed from was one which operated to reverse and nullify an order of the county judge during the 90 day period for which the county judge's order had been directed to continue in operation. And even if the matter is considered to be moot, the question raised relates to a subject of general interest to the public, and a decision thereon is important to delineate and preserve the jurisdiction of the courts involved. See Tau Alpha Holding Corp. v. Board of Adjustments, 126 Fla. 858, 171 So. 819; Pace v. King, Fla. 1949, 38 So.2d 823; Bowden v. Carter, Fla. 1953, 65 So.2d 871; Ervin v. Capital Weekly Post, Fla. 1957, 97 So.2d 464. The cases cited announce the rule that although questions raised in a litigated case may become moot before their decision by the appellate court in due course, the court is warranted in deciding them if they are of general interest to the people and of importance in the administration of the law.
For the reasons stated above, the judgment in habeas corpus must be reversed, and disposition of the case on this basis makes it unnecessary to discuss the other question relating to the appointment of the guardian.
Reversed.
HORTON, C.J. and PEARSON, J., concur.
NOTES
[1] See Haile v. Gardner, 82 Fla. 355, 91 So. 376.
[2] See McBurnett v. Warren, 208 Ga. 225, 66 S.E.2d 49; People ex rel. Cronin v. Warner, 268 App.Div. 867, 50 N.Y.S.2d 474; 39 C.J.S. Habeas Corpus § 77b.