**76 P.2d 947**

**ACKERMAN v. BAIRD et al.**

**No. 4294.**

Supreme Court of New Mexico.

Feb. 8, 1938.

A. Heinz and Barney T. Burns, both of Carlsbad, for appellants.

Caswell S. Neal and C. R. Anderson, both of Carlsbad, and Reed Holloman, of Santa Fe, for appellee.

W. A. Keleher and Theo E. Jones, both of Albuquerque, amici curiæ.

CHAVEZ, District Judge.

Suit was instituted by the plaintiff, J. D. Ackerman, appellee, against the defendants, appellants, to foreclose special assessment liens for paving against the several and separate properties of appellants in the city of Carlsbad, N. M. Separate answers were filed by appellants, to each of which answers the appellee demurred. The demurrers were sustained by the trial court and, the appellants having elected to stand on their answers, judgment was accordingly rendered for the plaintiff and from said judgment this appeal is taken.

For simplification, following entry of judgment, the parties signed and filed a stipulation which was approved by the trial judge, setting forth the agreed facts upon which the cause was decided on demurrer below and, of course, is to be determined here and limiting the issues to a single question. The stipulated facts will be briefly summarized as follows:

In the years 1928 and 1929 the city of Carlsbad authorized the paving of certain streets in said city. The proceedings before the city council looking to said improvements were duly had as provided by law and the cost thereof was assessed against the abutting lots benefited by the paving. Statements of lien therefor were filed with the county clerk against each piece of property benefited so as to constitute the assessment a lien against said lots. Assignable lien certificates were issued and became the basis of a bond issue in conformity with governing statutes. The appellee (plaintiff below) is the owner and holder of certain bonds of said issue so exchanged for assignable lien certificates.

The city of Carlsbad is a municipal corporation duly organized under the laws of New Mexico and was such in the years 1928 and 1929 when the special improvements mentioned were made. It was transformed from a town to a city under the provisions of Laws 1903, c. 111, in the year 1918. From the time of its existence as a city it has been divided into four wards. During all of said time the city council has been composed of four members only, consisting of one alderman from each of the four wards. The city council was so constituted at the time of the proceedings for the special improvements mentioned. Thus constituted it has been the only governing body of the city of Carlsbad throughout said period.

Paragraph 2 of the stipulation reads:

"That for the purposes of this appeal and upon the foregoing agreed statement of facts the sole issue to be determined is: 'Are the acts of the city council of the city of Carlsbad, consisting of one alderman from each ward of the city where the statute, then as now, provided that there be two aldermen from each ward, legal and valid so that it may be held that the said city council did have jurisdiction to act in the premises?' and no other issue shall be raised by appellants in the Supreme Court."

In view of the agreement of the parties that the sole issue shall be whether a city

council composed of four members had jurisdiction to act in the premises and that "no other issue shall be raised in the Supreme Court," we should confine ourselves to that issue, if it be decisive. We thus consider it. Indeed, in so stipulating, counsel for both parties must have deemed it decisive. In other words, the appellants have agreed that if a city council of four members had jurisdiction to act, judgment of the trial court is correct. If correct, this would seem to eliminate any occasion for reliance by appellee upon limitations or other provisions found in the paving statutes. Under the agreement there is no other irregularity or defect than a want of jurisdiction in the council upon which limitations could operate.

Thus, in our opinion, is presented the main question whether in a newly created city, where only one alderman from each ward has been elected and the city throughout its history has functioned with a city council composed of only four members, even conceding that the governing statutes require eight, are the official acts of the four-man board valid and binding? Every other question presented and argued is resolved by an affirmative answer to the foregoing question.

The appellants put forward, for our consideration in deciding the main question, a certain declaration of principles as applicable to this case, as follows:

"A. Municipal corporations are but political subdivisions of the state and have only such powers as have been conferred upon them by the state and such other powers as may be necessarily implied from the grant given."

"B. A municipal corporation has no inherent powers."

"C. Powers conferred on municipal corporations are a grant and not a limitation, of power."

"D. Powers delegated to municipal corporations are to be strictly construed, and particularly is this true with respect to improvements for which special assessments are to be levied."

"E. Where the Legislature prescribes the manner and mode in which municipal corporations shall exercise the powers delegated to it, the same must be adhered to and followed."

"F. Those dealing with a municipal corporation do so with notice of its and its agents' powers."

They cite various texts and authorities in support of the general principles above enumerated. We have carefully considered them and, although the texts and authorities cited tend to support these general propositions in a proper case, nevertheless none, we think, is applicable in the case at bar. Most of the authorities cited by appellants under this point are cases wherein a properly constituted board has attempted to carry out a power granted and failed to follow the statutory mode of procedure. None of them, however, is applicable to the issue whether a certain board is properly constituted under the statute or, if not, whether

its integrity as a board may be successfully challenged where it has functioned for many years as the only governing body of a municipality.

Both appellants and appellee have cited various statutes of the state of New Mexico. Among the statutes which we consider pertinent to the issue in this case are the following:

"90-601. *Cities—Corporate authority— Mayor—Aldermen—City council.* The corporate authority of cities organized under this chapter shall be vested in a mayor and a board of aldermen, to be denominated the city council, together with such officers as are in this chapter mentioned or may be created under its authority. [L. '84, Ch. 39, § 65; C.L. '97, § 2456; Code '15, § 3584."

"90-604. *Officers—Term—Election.* The qualified electors of cities shall on the first Tuesday of April of each even numbered year elect one mayor, one clerk, and one treasurer, for the term of two years, and shall elect one alderman from each ward, who shall hold their offices for the period of four years. The provisions of this section shall apply to all cities in the state, whether incorporated under general or special laws. [L. '03, Ch. 9, § 3, as amended by L. '03, Ch. 93, § 2; Code '15, § 3587."

A review of the history of municipal legislation bearing most directly on the issue presented shows that the territorial Legislature in 1884 enacted a comprehensive statute with reference to municipalities. Chapter 39, Laws of 1884. By section 76 of chapter 39, Laws of 1884 (also carried as section 1684, C.L.1884), it was provided:

"Sec. 76. The qualified electors of each ward in cities shall annually, on the first day of April, elect by a plurality of votes, one alderman, who shall at the time be a resident of the ward and a qualified elector therein. His term of service shall be two years, and if any vacancy shall occur in the office of alderman by death, resignation, removal, or otherwise, the same shall be filled by election. The qualified electors of each city shall also elect, by a plurality of votes, a city treasurer, who shall hold his office for one year, and shall have such powers and perform such duties as are prescribed in this act, or by ordinance of the city council not inconsistent herewith."

By section 103 of ch. 39, Laws of 1884 (also carried as section 1711, C.L.1884), it was provided:

"Sec. 103. At the first general election in cities, after incorporation under this act, two aldermen shall be elected from each ward, and the council shall determine by lot their term of service, so that one member from each ward may serve two years, and one for one year. Thereafter one alderman in each ward shall be elected annually as provided in section eighty-five of this act." (Note: The words "eighty-five" are clearly an error, and should be "seventy-six").

The last-quoted statute evidently inaugurated the staggering system in the election of aldermen.

Section 3, chapter 9, Laws of 1903, provided for the election of April, 1904, and for the election of two aldermen from each ward, one for the term of two years and one for the term of four years. The same Legislature, by section 2 of chapter 93, Laws of 1903, amended section 3 of chapter 9, Laws of 1903, by adding thereto the following:

"And on the first Tuesday of April, 1906, and each two years thereafter, the qualified voters of cities shall elect one alderman and one member of the board of education from each ward, who shall hold their offices for the period of four years. The provisions of this act shall apply to all cities in the territory, whether incorporated under general or special laws."

Provision thus was made for the election of two aldermen from each ward in cities in existence in 1904, and by the amendment thereto provision is made for the election of one alderman in 1906 and every two years thereafter to hold office for the term of four years.

Laws 1903, c. 9, § 3, as amended by Laws 1903, c. 93, § 2, in its relation to cities, was reframed by the compilers of the 1915 Code and its substance re-enacted as section 3587 thereof, omitting, of course, reference to provision for the election of 1904 required by section 3 of said chapter 9. It appears as section 90-604 of the 1929 Compilation and has since been amended in a respect unimportant to our present question. See Laws 1931, c. 85.

Chapter 36, Laws 1903, extended the provisions of Laws 1903, c. 9, "to all cities in the Territory of New Mexico, whether incorporated under general or special laws."

Chapter 111, Laws 1903, made provision for incorporated towns and villages becoming cities where the population equalled or exceeded 2,000 people, subject to the conditions of the act. Upon the presentation of a sworn statement to the Governor showing assessed valuation of property within the proposed city limits, the corporate name and the boundary lines thereof, it was made the Governor's duty to issue a proclamation. The proclamation was required to be published in the county where the town or village was located and a certified copy posted in a conspicuous place within the corporate limits of the town. The act further provided that at the end of five days after the posting of such proclamation, "the board of trustees of such town or village, shall proceed to organize the same into a city by dividing it into wards of not less than four, and shall call an election for the election of an alderman from each ward and a mayor from the city at large, and upon the election and qualification of such aldermen and mayor, the term of office of the officers of such town or village shall expire, and thereafter such town or village shall be a city with all the powers, privileges, duties and liabilities of cities in the Territory of New Mexico."

Carlsbad changed from a town to a city in 1918, as appears from the agreed facts. Pursuant to the provisions of Laws 1903, c.

111, a special election was held and one alderman elected from each ward of the newly organized city. Presumably the four aldermen so elected served until the regular biennial election provided for in 1929 Comp. § 90-604, hereinabove quoted, at which time one alderman from each ward was again elected for the term of four years. At the next biennial election all elective municipal offices were filled except that of alderman.

The difficulties which must have confronted the city officials in an effort to inaugurate the staggering system in the election of aldermen upon the transformation from town to city are obvious, if, indeed, they gave the matter thought at all. The way was pointed by Laws 1884, c. 39, § 103, if it was still in force. But even so, the biennial election called for by 1929 Comp. § 90-604 must be substituted for the annual election provided by section 76 of the 1884 act, referred to in section 103 and mistakenly designated section 85. In addition, the term of "two years" provided in section 76 of the 1884 act must be read to mean "four years." Had the city fathers been able to make the difficult hurdle of holding sections 76 and 103 of the 1884 act still in effect and to accomplish the unusual feat in construction just pointed out, the staggering system might have been put in operation at the first biennial election following the transformation from town to city.

An easier and safer way would have been to elect only one alderman for the four-year term at the first biennial election, permitting the one alderman named at the preceding special election held under Laws 1903, c. 111, to hold over for want of a successor. Const. art. 20, § 2. Then at the next biennial election one alderman could have been elected for a four-year term. The staggering system thus would have been in full and successful operation.

But the city of Carlsbad made no effort whatever to adopt the staggering system. On the contrary, it handled the matter as above set forth. It thus happens that the city, electing one alderman only, every four years, has failed to meet the requirements of section 90-604 in the selection of aldermen. Its failure so to do presents the question whether a city council, consisting of one alderman from each ward instead of the two contemplated by section 90-604, which has conducted the affairs of the city over a decade and constitutes the only governing body the city has ever had, is a mere nullity.

The question is answered by the decisions, one by our own court, to be quoted presently. It seems also to be answered by our municipal code.

"There is another reason why the defense which we have been considering cannot be sustained. It is that the general acquiescence by the inhabitants of a political subdivision organized under color of law, and by the departments and officers of the state and county having official relations with it, gives to the acts and contracts of those officers on its behalf as a subdivision de facto all the force and validity of their acts in its behalf as a subdivision de

jure. The acts of ordinary municipal bodies organized under color of law depend far more upon general acquiescence than upon the legality of their action or the existence of every condition precedent prescribed by the statutes under which they organize and act. The interests of the public which depend upon such municipalities and their various subdivisions, the rights and the relations of private citizens which become fixed in reliance upon their existence, the injustice and confusion which must result from an ex post facto avoidance of their acts, commend the justice and demand the enforcement of the rule that, when a municipal body or a political subdivision of a state or county has, or its officers have, assumed, under color of authority, and have exercised for a considerable period of time, with the consent of the state and its citizens, powers of a kind recognized by the organic law, neither the corporation, subdivision, nor any private party can, in private litigation, question the legality of the existence of the corporation or subdivision." Clapp v. Otoe County, 8 Cir., 104 F. 473, 482.

In City of Albuquerque v. Water Supply Co., 24 N.M. 368, 174 P. 217, 228, 5 A. L.R. 519, we said:

"Here we have a statute which, to say the least, has the appearance of a valid law, enacted by the Legislature, the branch of the state government charged with the creation of municipal corporations, under which an existing municipal corporation was given the right to reincorporate under the new statute, which its people did in good faith. The officers of the old municipality, relying upon the validity of the act, voluntarily surrendered their offices, and turned over the money and property of the city and the management of its affairs to the officers elected under the charter adopted pursuant to the new enactment. These new officers, in the utmost good faith, have administered the affairs of the city, have spent its money, levied taxes, enacted ordinances under which perhaps people have been imprisoned. The county treasurer has collected the city taxes, and, relying upon the validity of the act, has turned over to the city commissioners the money. Contracts have been made by the new city government, property acquired and used for the benefit of the city, and obligations are outstanding, signed by the officers under the new charter. If we should apply the rule adopted by some of the courts, and hold that the doctrine announced by Mr. Justice Field in the Norton-Shelby County Case, supra [118 U. S. 425, 6 S.Ct. 1121, 30 L.Ed. 178], applies, we would destroy the only existing government in Albuquerque. Chaos and disorder, confusion and endless litigation, would result, and bankruptcy and ruin would possibly confront the county treasurer, who had paid over to the supposed officers of the city, in the utmost good faith, money which he justly assumed the commissioners were entitled to receive. Further, the terms of office of the mayor and one-half of the old city councilmen have expired. There would not even be a quorum left to transact the business of the city and to fill the vacancies existing in the old offices.

"In view of the foregoing, it is clear that the court should not adopt a rule of law which would bring about such results, unless required to do so by the most cogent reasons."

If it is the law, as we think, that "A municipal corporation is never without its governing body; and this body when duly organized, is a continuous body, although there may be changes in its membership by reason of the expiration of the terms of its members, or because of vacancies occasioned by death, removal, or other causes," 43 C.J. 491, § 743, and if, as in this case, there have always been only four aldermen and a mayor in the city of Carlsbad, and the acts of the only governing body in that city have been acquiesced in by the inhabitants thereof, contracts and other agreements made and enforced, relations had with the county and state governments, bonds issued in good faith by this only governing body, and their contracts relied upon by private citizens, can we, in morals, equity and law, now say that their acts are null and void? The acts of the city council of Carlsbad, although consisting of only four members and a mayor, elected in conformity with the law, have more than what is generally termed a "color of law." If we were to apply the rule contended for by the appellants, as was said in the case of City of Albuquerque v. Water Supply Co., supra, "we would destroy the only existing government" in Carlsbad. "Chaos and disorder, confusion and endless litigation, would result."

The considerations controlling these decisions undoubtedly moved our territorial Legislature to write as a part of the municipal code, chapter 39, Laws of 1884, § 99, incorporated as section 3779 of the Code of 1915, now appearing as section 90-3701 of Comp. 1929, amended in a respect immaterial to this case by Laws 1919, c. 21. As amended, it reads:

"90-3701. *Defective organization—Curative preventions—Limitation of action.* Any city, town, or village which shall have exercised the rights and powers of a municipal corporation, and shall have in office a board of officers exercising the duties of their offices, and the legality of the formation or organization of which shall not have been or shall not be legally denied or questioned within two years from the date of its formation or organization, shall be deemed to be a legally incorporated city, town or village, and its formation, organization, or incorporation, shall not be thereafter questioned. [L. '19, Ch. 21, § 1, amending Code '15, § 3779."

The attack now made upon the acts of the city of Carlsbad, through its four-man board of aldermen is forbidden by the spirit, if not by the letter, of this curative statute.

We find that the acts of the city council of the city of Carlsbad involved in this case are legal and valid and that upon the case as a whole the judgment of the district court should be affirmed.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.