STATE OF IOWA ex rel. EMMA A. SHAW, appellee, v. FRANK BREON, appellant.

No. 48033.

(Reported in 55 N.W.2d 565)

NOVEMBER 11, 1952.

Hal P. Beck and Herman T. Bailey, both of Ottumwa, for appellant.

Robert L. Larson, Attorney General, Raphael R. R. Dyorak, Assistant Attorney General, and Samuel O. Erhardt, County Attorney, for appellee.

MULRONEY, C. J.—This is a juvenile case commenced upon the petition of Emma A. Shaw alleging under oath "that Frank Breon under the age of 18 years * * * is a delinquent child, for the said Frank Breon as * * * petitioner is informed and believes is growing up in idleness and crime, contrary to the statutes of the State of Iowa, in such cases made and provided, and against the peace and welfare of the State of Iowa." The petition states the said Frank Breon was in the custody of his mother, Myrtle Breon, and notice was served upon her of the filing of the petition and that a hearing would be had thereon on September 15, 1951. It appears the father is in the state hospital for the insane at Mount Pleasant and the acting superintendent of that institution accepted service of the notice and attached petition, but in

his acceptance stated personal service of the same on the father would injuriously affect him.

Hearing was had before the court on September 15, 1951, without a court reporter. The petitioner was represented by the county attorney but defendant was not represented by counsel at this hearing. The judge's notes, made at the time of this hearing, state: "Defendant present in court. Notice served on mother personally, and service accepted for father by Superintendent of Mt. Pleasant Hospital for Insane. Hearing proceeds. Evidence heard. The court finds the defendant is a delinquent boy of the age of fifteen years and has been guilty of assaulting women. It is ordered that he be committed to the Industrial School for Boys at Eldora, Iowa, as by law provided."

A few days later, at the request of counsel then appearing for Frank Breon, the court ordered the case "reopened and reheard on its merits." Hearings were then had on September 22 and September 29, 1951, at which hearings witnesses testified and the court reporter reported all that transpired and all of the evidence at these hearings. At the conclusion of the hearing on September 29, after both parties had rested, the court stated that he did not care to hear any arguments by counsel; that it was "quite clearly established this boy has been guilty, not only of drinking, but going into a place where he wasn't known and assaulting a woman apparently with intent to commit rape." Thereupon the court entered an order finding the boy "a delinquent child under the age of sixteen years and guilty of assaulting a woman with intent to commit rape" and ordering him "committed to the Industrial School for Boys at Eldora, Iowa, as by law provided." Defendant appeals.

The evidence introduced by plaintiff shows the boy's actions on a single day, to wit, August 31, 1951. Frank, who was then fifteen years old, had been working for a construction firm for about a week. There he had met another construction worker named Everett Scarlett who lived with his uncle, William Shaw, in the latter's apartment. Frank and Everett got off work about noon on Friday, August 31, and they bought six cans of beer and went down to the river bank and each drank three cans. Later that afternoon they bought eight more cans of beer and after drinking four they went to the Shaw apartment. Mrs.

Shaw, her married daughter, and the daughter's year-old baby were in the apartment. Shortly thereafter Everett and Mrs. Shaw's married daughter left the apartment and went to a neighboring beer parlor. Frank asked if he could go with them but Everett told him to wait until they returned. Mrs. Shaw testified that while she and Frank were alone in the apartment Frank seized her and attempted to have sexual intercourse with her. She testified at length as to her struggle with Frank and her screams for help and then said she managed to throw Frank behind the bed and escape and call the police. There is testimony that Frank was drunk or sick from the beer. He denied Mrs. Shaw's story about his attempted assault. He said he lay down on the bed and went to sleep. He was lying face down on the bed when the officers came. They said he was not asleep but he appeared "groggy, dopey." The barber who operates his shop under Mrs. Shaw's apartment heard no screams or any special noise in the apartment above him that afternoon. He said that generally he could hear noises in the apartment, such as the crying of the baby.

There is no testimony showing Frank had ever before violated any law or in fact been guilty of any misconduct. Several witnesses who had known him all his life or for many years testified as to his prior good conduct. They said he was "always nice"; that he had "always been a fine boy." They described him as being "courteous" and very "pleasant to deal with." A grocer who had known him since he was born and who had employed him in his store on Saturdays and evenings for most of the prior two-year period described him as "an awful good boy." Another neighbor for whom he did odd jobs described him as "eager to work." His teacher during the school year 1950-1951 described Frank as a "trustworthy boy." The teacher also said his intelligence test showed him to be average. Not a witness had ever heard him use bad or obscene language and none of them had ever heard of his being in any kind of trouble before.

I. As previously stated, the broad charge against Frank was that he was a "delinquent child." Section 232.3, Code, 1950, states:

"The term 'delinquent child' means any child:

"1. Who habitually violates any law of this state, or any town or city ordinance.

"2. Who is incorrigible.

"3. Who knowingly associates with thieves, or vicious or immoral persons.

"4. Who is growing up in idleness or crime.

"5. Who knowingly frequents a house of ill fame.

"6. Who patronizes any policy shop or place where any gaming device is located.

"7. Who habitually wanders about any railroad yards or tracks, gets upon any moving train, or enters any car or engine without lawful authority."

The petition narrowed the charge to No. 4 in that it alleged he was a delinquent child because he was growing up in idleness and crime. It can hardly be argued this record established the specific charge made. As to the charge of idleness the record shows quite the contrary. And the phrase "growing up in crime" must be descriptive of a status or tendency toward crime. Evidence tending to establish a single violation of law would fall far short of showing an infant's growth in the direction of crime. Kahm v. The People, 83 Colo. 300, 264 P. 718.

Under our early statutes the only commitments of children to the training schools were commitments of children charged with any crime except murder, and found guilty. Section 2708, Code, 1897. The statute gave the court discretion to order the child to the industrial school instead of entering the judgment of conviction. In 1904 the Thirtieth General Assembly enlarged the powers of the district court and authorized the commitment of children who were "delinquent." Chapter 11, Acts of the 30th G. A. This later Act, in section 2, defined the term "delinquent child" much as it appears today under section 232.3, previously quoted, except that No. 1 did not have the word "habitually" in it. The word "habitually" was added to No. 1 in the definition in 1924 by H. F. 84, section 352, Acts of the Fortieth Extra General Assembly (unpublished).

When the district court's power to commit children to the industrial schools was enlarged to include delinquents in 1904, as above noted, the statutes retained the provisions authorizing

such commitments instead of judgments of conviction for children who were found guilty of crimes except those found guilty of crimes punishable by death or life imprisonment. Acts 30th G. A., chapter 11, section 5 et seq.; section 232.20, Code, 1950. In 1924 when, as previously pointed out, the legislature added the word "habitually" to No. 1 in its list of definitions of a delinquent in connection with violating laws or ordinances, it also gave the court discretion as to the course the proceeding against the child was to take. Section 365 of II. F. 84, Acts of the 40th Ext. G. A. (unpublished) added what is now section 232.16, Code, 1950. It gives the court discretion "in any case after an investigation of the facts and circumstances * * * [to] cause the child to be charged" with an indictable or nonindictable offense. If the charge is an indictable offense the court is to hold a preliminary hearing and exercise the power of a magistrate. If the offense charged is not triable on indictment the court proceeds to try the case before a jury of twelve.

This then is the law as to the commitment of children under eighteen years of age to the training schools in so far as it would have any bearing on this case. Where there is a charge of crime and a conviction of the child by plea of guilt or jury verdict the court may (if the punishment be not imprisonment for life, or death), instead of entering judgment of conviction, commit the child to the training school. Section 232.20, Code, 1950. When there is a petition filed charging that the child is a delinquent the court may, after an investigation, cause the charge to be changed to a charge of a specific crime. Section 232.16, Code, 1950. If the charge is not changed and the matter proceeds to hearing on the petition charging the child is a delinquent the court may, if he finds the child is a delinquent as defined in section 232.3, Code, 1950 previously quoted, commit the child to the training school.

The trial court is given discretion as to whether he shall cause the child to be charged with an offense or not. Section 232.16, Code, 1950. But this does not mean the child can be tried for the offense without the charge. The discretion which the trial court must exercise is a choice of issues to be presented for trial. If the issue is to be the child's guilt or innocence of a certain

offense the charge of that offense must be made and the case must proceed as other criminal prosecutions to the point where the child is found guilty or not guilty. If the issue is to be whether the child is delinquent as defined in section 232.3, Code, 1950 the court may proceed to try the case on the delinquency petition. The court is given no discretion to try and determine a criminal charge on a delinquency petition. We think the court would have discretion if the investigation showed both delinquency and probable commission of a crime, as to whether the cause should proceed on the delinquency petition or a charge of crime ordered. But if the investigation does not indicate delinquency as defined by statute but does show the probable commission of a crime the charge of commission of the crime must be made. If the child pleads guilty he can be sent forthwith to the training school without the entry of the judgment of conviction. If the child pleads not guilty no commitment to the training school can be made until a jury finds him guilty.

█ █ When we apply the above law to this case it is perfectly apparent the plaintiff sought to establish the alleged delinquency by proof of a specific crime. It is also apparent the boy was pleading not guilty to the crime. Upon plaintiff's uncorroborated testimony that Frank assaulted her with intent to commit rape, the trial court makes a finding that Frank is "guilty of assaulting a woman with intent to commit rape." He was entitled to a jury trial on that issue. There was not the slightest attempt on the part of plaintiff to establish that Frank was a delinquent child within any of the seven definitions listed in section 232.3, Code, 1950. All of plaintiff's evidence was directed toward establishing the assault, which Frank was denying. The police officers took him into custody on plaintiff's complaint of the alleged assault. While the charge of "delinquency" was made, plaintiff proceeded as if the charge of "assault with intent to commit rape" had been made. The petition charging delinquency should only be made when there is no charge of specific crime. The delinquency statutes permit the administration of corrective and reformatory measures in a proper case *before the child commits a crime or at least without any charge of specific crime.* They were not designed as a substitute for a

charge of a specific crime nor were they intended to deprive the child of his constitutional right to a jury trial when the only issue presented is whether the child did or did not commit a specific crime. The issue of Frank's guilt or innocence of the crime of assaulting Mrs. Shaw was not tendered by the delinquency petition. The trial court's finding of guilty of assault with intent to commit rape cannot be sustained. And his judgment of delinquency, so patently based on his finding that Frank was guilty of assaulting Mrs. Shaw with intent to rape, is reversed.—Reversed.

All JUSTICES concur.