437 P.2d 716

**Albert PEYTON, a minor, Petitioner,**

**v.**

**Tom NORD, Sheriff of Chaves County, New Mexico, and George L. Reese, Jr., Sitting as Judge of the Juvenile Court, of the Fifth Judicial District, Chaves County, New Mexico, Respondents.**

**No. 8456.**

Supreme Court of New Mexico.

Feb. 26, 1968.

A. D. Solsbery, Wm. F. Brainerd, Roswell, for petitioner.

Boston E. Witt, Atty. Gen., Gary O'Dowd, Asst. Atty. Gen., Santa Fe, for respondent Nord.

Morris Stagner, Dist. Atty., Clovis, W. Byron Caton, Farmington, as amicus curiae.

PER CURIAM:

Upon consideration of motion for rehearing the opinion heretofore filed is withdrawn and the following substituted therefor:

OPINION

MOISE, Justice.

This is an original proceeding wherein petitioner seeks habeas corpus to effect his release from the custody of the sheriff of Chaves County. The record discloses that petitioner is a minor who was adjudged to come within the Juvenile Code of New Mexico, in that he violated §§ 40A–16–1 and 40A–16–3, N.M.S.A.1953; was made a ward of the court until he reaches the age of twenty-one, or until the further order of the court, and was ordered committed to the New Mexico Boys' School during that period. He is in the physical custody of respondent Nord, Sheriff of Chaves County, pending delivery to the New Mexico Boys' School pursuant to the order adjudging him to be a ward of the court, and committing him to that school.

Honorable George L. Reese, Jr., sitting as Judge of the Juvenile Court of the Fifth Judicial District, Chaves County, New Mexico, is named as a respondent. He is not a proper party since only the person having the physical custody of a petitioner, and who is able to produce him in court, may properly be named as respondent in a habeas corpus proceeding. Dunbar v. Cranor, 202 F.2d 949 (9th Cir. 1953); Clark v. State, 122 So.2d 807 (Fla.D.Ct. of App.1960); Moore v. United States, 339 F.2d 448 (10th Cir. 1964); State v. Clark, 270 Minn. 181, 132 N.W.2d 811 (1965). Respondent, Judge Reese, is accordingly dismissed as a party.

Although petitioner sets forth five points in his brief, only three serious questions are in fact presented. (1) Is the Juvenile Code adopted in 1955 and the juvenile court therein created, constitutional? (2) Was the denial of a trial by jury a denial of constitutional rights guaranteed by the United States Constitution and the New Mexico Constitution? (3) Does the fact that petitioner could and did receive a penalty different from that provided when adults violate the same provisions of law deny the petitioner due process of law and equal protection of the law?

All of the questions as thus enumerated are serious and difficult. The issue of the constitutionality of the juvenile laws preceding the 1955 Code (ch. 205, N.M.S.L. 1955) and the courts thereby created has been heretofore considered by this court. In State v. Eychaner, 41 N.M. 677, 73 P.2d 805 (1937), the question of the right to appeal from the juvenile court created by ch. 87, N.M.S.L.1921, was presented. It was there held that the juvenile court was a court inferior to the district court created under authority of Art. VI, § 1, N.M.Const., and was accordingly a de jure court. Without in fact deciding the constitutionality of the legislation creating the court, the holding was limited to a determination that judgments of the juvenile court were not appealable under Art. VI, § 2, N.M.Constitution (since amended), wherein appellate jurisdiction was vested in the Supreme Court from "all final judgments and decisions of the district courts."

Thereafter, in the case of In re Santillanes, 47 N.M. 140, 138 P.2d 503 (1943), a many-pronged assault was leveled on the 1921 juvenile court law (ch. 87, N.M.S.L.

1921) and the juvenile court as therein established. With Justice Bickley dissenting, the court held the law invulnerable to the attacks there made against it.

The 1955 Juvenile Code has never been considered by this court except in State v. Urioste, 63 N.M. 335, 319 P.2d 473 (1957), where without examining any possible change in the nature of the juvenile court as organized under the Code, from that created by ch. 87, N.M.S.L.1921, it was determined that ch. 205, § 41, N.M.S.L.1955, providing for an appeal from juvenile court to the Supreme Court, violated Art. VI, § 13, N.M.Const., and under the authority of State v. Eychaner, supra, the particular section of the law was held unconstitutional and, further, it was concluded that this court was without jurisdiction to consider the appeal.

■ The instant case is not an appeal and our jurisdiction arises out of Art. VI, § 3, N.M.Const., wherein this court is given original jurisdiction in habeas corpus proceedings. Respondent does not question either the right of petitioner to attack the constitutionality of the Juvenile Code or to proceed in this court, and we do not see that there is any barrier to our considering the issues raised. See In re Hickok's Will, 61 N.M. 204, 205, 297 P.2d 866 (1956). Although it has been our practice to refuse to take jurisdiction in habeas corpus proceedings which could be brought in the district courts in the first instance, under the circumstances here present whether the juvenile court is a separate court inferior to the district court presided over by the same individual who is also the district judge or is a part or branch of the district court, it would seem quite apparent that to require presentation of a petition for habeas corpus in the first instance to the district judge would be a vain and useless prerequisite.

We are here called upon to examine our Constitution and the 1955 Juvenile Code as related thereto and, based thereon, to arrive at a conclusion as to whether the court created by the Code can withstand an attack on its constitutionality. The really pertinent provision is Art. VI, § 1, N.M.Const., as it existed in 1955 (it was amended in 1965 to provide for a court of appeals, but is otherwise unchanged). It read:

"The judicial power of the state shall be vested in the senate when sitting as a court of impeachment, a Supreme Court, district courts, probate courts, justices of the peace, and such courts inferior to the district courts as may be established by law from time to time in any county or municipality of the state, including juvenile courts."

Article VI, § 13, is also pertinent. It reads, in part:

"The district court shall have original jurisdiction in all matters and causes not excepted in this Constitution, and such jurisdiction of special cases and proceedings as may be conferred by law, and appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts, and supervisory control over the same. The district courts, or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and all other writs, remedial or otherwise in the exercise of their jurisdiction; provided, that no such writs shall issue directed to judges or courts of equal or superior jurisdiction. The district courts shall also have the power of naturalization in accordance with the laws of the United States. Until otherwise provided by law, at least two terms of the district court shall be held annually in each county, at the county seat."

■■ These sections of our Constitution clearly specify the jurisdiction of the district courts, and authorize creation by the legislature of courts inferior to district courts in any county or municipality of the state. However, we do not consider that

the provision allowing creation of inferior courts in counties or municipalities, "including juvenile courts," in any sense required that the jurisdiction of district courts over juveniles established by Art. VI, § 13, supra, be transferred to a court inferior to the district court. To the contrary, the jurisdiction was placed in the district courts and was to remain there until an inferior juvenile court was created. Is this what was done in 1955, or was a juvenile division of the district court thereby created? Respondent argues that the juvenile code created a division of the district court. In our view, this is correct.

Our first juvenile court was established in 1917 by ch. 4, N.M.S.L.1917. It was provided in Section 2 thereof, that "The *district court* of each county in this state shall have exclusive original jurisdiction over juvenile delinquents and over those who contribute to such delinquency * * and while sitting in exercise of its said jurisdiction shall be known and referred to as the juvenile court." An appeal was provided to the Supreme Court from judgments involving persons contributing to juvenile delinquency, "in the same manner as other final judgments from the district court." No provision was made for appeals from other determinations made under the act. However, it seems amply clear that the "juvenile court" created by this act was nothing more than the district court while sitting and considering the matters covered thereby. Notwithstanding its jurisdiction over juvenile matters, that it was not a court inferior to the district court created for a county or municipality, and was not in conflict with the restraints of Art. VI, § 1, quoted above, would seem to be beyond argument.

However, what was the situation under ch. 87, N.M.S.L.1921? That act changed ch. 4, sec. 2, N.M.S.L.1917, creating the juvenile court, to read, "There is hereby established *in each County* of this State a Court to be known as the 'Juvenile Court of _____ County, New Mexico.' Said

court shall have exclusive original jurisdiction over juvenile delinquents and over those who contribute to their delinquency, and over all matters arising under this act. The District Judges of the State shall be the Judges of the Juvenile Courts in the Counties of their respective districts; * * *." (Emphasis added). In view of the change from "the district court of each county" as the juvenile court, to the establishment in each county of a juvenile court presided over by the district judge, it is not surprising that questions should have arisen as to whether, after 1921, the juvenile court was constitutionally created. Under this act, was the jurisdiction attempted to be given to the juvenile courts vested in the district courts by Art. VI, § 13, supra, and were the district judges thereby made county officers with six-year terms, whereas Art. X, § 2, N.M.Const., provides that terms of county officers shall be two years and they shall be eligible for only two successive terms? These were among the issues raised in State v. Eychaner, supra, and In re Santillanes, supra.

Although the means to counter the attacks addressed to the constitutionality of the court were found, it is quite evident from a careful reading of the opinion that the court was hard-pressed to do so in certain areas. We note particularly the statement of the court in In re Santillanes, supra, that "If Chapter 4, Laws 1917, * * as amended by Chapter 87, Laws of 1921, undertakes to abrogate the jurisdiction of district courts reposed by that portion of Section 13 of Article VI of the Constitution, as follows: 'The district court shall have original jurisdiction in all matters and causes not excepted in this constitution' a serious question might be presented." We would likewise note the following, also quoted from that case:

"Over this period hundreds of our youth have suffered judgments of juvenile delinquency and been forcibly detained. At the moment, the New Mexico Industrial School for Boys, at Springer,

and the Girls Welfare Home at Albuquerque have their quotas of juvenile delinquents forcibly detained for varying periods. If in this proceeding we are to have a declaration that there is no juvenile court, as petitioner contends, and never has been, then hundreds have been, and scores now are, illegally restrained of their liberties. Every inmate of either institution upon proper application should receive his or her discharge and every boy and girl in every county in the state under probation by order of the juvenile court is subject to release therefrom. These are but a few of the serious and weighty consequences to follow a declaration in this proceeding at petitioner's instance of the effect claimed for it, that there is [not] and never has been a juvenile court.

"It is for the state, a sovereign, not for a private suitor, to invite a decision of the questions he raises. Whatever the true rule may be for an application of the de facto doctrine as respects the existence of a de jure office before there can be a de facto officer—and the authorities present a sharp conflict on the subject—this court in City of Albuquerque v. Water Supply Co., supra [24 N.M. 368, 174 P. 217, 5 A.L.R. 519], approved in Ackerman v. Baird, supra [42 N.M. 233, 76 P.2d 947], expressly declined to follow Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178, the leading case, in giving rigid adherence to the condition that there must be a de jure office before there can be a de facto officer. We held, on the contrary, that where uncertainty, chaos and confusion would result if the requirement were rigidly adhered to, public policy forbade upholding the condition. We think this is such a case. * * *"

Moving to the 1955 Code, the constitutionality of which, as already noted, has been considered by the court only in State v. Urioste, supra, we find that once again the legislature established "*in each judicial district* of this state a court to be styled as the 'Juvenile Court of the _____ Judicial District for _____ county, New Mexico.' * * *" (Emphasis added). (§ 13–8–19, N.M.S.A.1953, being ch. 205, § 1, N.M.S.L.1955). In § 13–8–20, N.M.S.A.1953, pock. part (ch. 205, § 2, N.M.S.L. 1955) "Judge" is defined as "judge of the district court who shall also serve as judge of the juvenile court." Once again, it would seem that the legislature has created the juvenile court as a division of the district court and, thereby, any questions concerning violations of Art. VI, §§ 1 or 13, would appear to be obviated.

As we understand petitioner's argument, it proceeds on the theory and premise that the juvenile court created in 1955 is a court inferior to the district court and, accordingly, under Art. VI, § 1, could only be created in a county or municipality—not in a district. At the same time, petitioner concedes that ch. 4, § 2, N.M.S.L.1917, giving district courts of each county "exclusive jurisdiction over juvenile delinquents * * *," and providing that it shall be known as the "juvenile court" was undoubtedly valid as a provision for special juvenile proceedings in district court. If this is true, we fail to see how the Juvenile Code of 1955 does anything different. It establishes a juvenile court in each judicial district and makes the district judge, the judge of the juvenile court. Is this distinguishable from what was done in 1917 which is concededly constitutional? We unhesitatingly say, "No." Neither do we find any support for petitioner in State ex rel. Hovey Concrete Products Co. v. Mechem, 63 N.M. 250, 316 P.2d 1069 (1957). We have already noted State v. Urioste, supra, also relied on by petitioner in this connection. It is our feeling that the decision there was erroneous, and attribute this fact to a failure to consider the difference between the court created in 1921 and the one created in 1955. The juvenile court provided for in the 1955 law is part

and parcel of the district court and is not an inferior court created pursuant to Art. VI, § 1, N.M.Const., as was assumed in State v. Urioste, supra. With the failure of petitioner's major premise that the juvenile court is a court inferior to the district court, his entire argument collapses.

Although it is interesting to note that ch. 87, § 1, N.M.S.L.1921, was not repealed by the 1955 Juvenile Code, and a contention could be made that the court thereby created continued in existence after 1955 along with the court provided for by the Code, that question is no longer open since the section was specifically repealed in 1965 (ch. 240, § 2, N.M.S.L.1965). Respondent suggests in his brief that the failure to repeal the 1921 provision creating the juvenile court may explain the decision in State v. Urioste, supra. In our view, a more likely explanation is the one already noted that counsel failed to argue and this court to consider, that the juvenile court created in 1955 was in reality the district court exercising the jurisdiction over juveniles granted by the act and was not a court inferior to the district court. Whatever the basis or reason, we are satisfied that since 1955 the juvenile court has been invulnerable to attack as violative of either §§ 1 or 13, Art. VI, N.M.Const., and that it is and has been a part of the district court, presided over by the district judge. When the juvenile court is hereinafter discussed, our reference is to the district court acting in the exercise of the jurisdiction over juveniles granted it by the 1955 Code. In this connection, it is pertinent to note that support for our conclusion is present in the provisions of the 1955 Code that employees of the juvenile court are to be paid out of the district court fund (§ 13–8–21, N.M.S.A.1953); the clerk of the district court is also clerk of the juvenile court (§ 13–8–22, N.M.S.A.1953); and the district judge and district attorney are, respectively, judge of the juvenile court and juvenile attorney (§ 13–8–20, N.M.S.A.1953). Petitioner's attack on the juvenile court as not constitutional is held to be without merit.

Whether the right to jury trial in *all* proceedings in juvenile court is guaranteed by either the federal or state constitutions need not be decided in this case. Whatever the correct answer to that question may be, under the facts here present petitioner is guaranteed a jury trial by our Constitution. This is true whether or not the Fourteenth Amendment of the United States Constitution would also require it.

There can be no question that prior to the adoption of our first juvenile law in 1917 (Ch. 4, N.M.S.L.1917), a minor charged with having committed a criminal offense was handled no differently than an adult. See In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Under the provisions of Art. II, § 12, N.M.Const., which reads in part, "The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate," he would have been entitled to have his guilt determined by a jury before he could have been imprisoned. On what kind of theory could this be denied him merely by creating a juvenile court and by denominating the proceedings as something different than criminal?

Petitioner is here charged with being a juvenile delinquent because of alleged violations of criminal law. The ultimate consequences, if it is determined that the charge is true, may be confinement in New Mexico Boys' School. § 13–8–53, N.M.S.A. 1953. As stated in In re Gault, supra, at 87 S.Ct. 1443:

"Ultimately, however, we confront the reality of that portion of the juvenile court process with which we deal in this case. A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence—and of limited practical meaning —that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home'

or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with white-washed walls, regimented routine and institutional hours * * *.' Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and 'delinquents' confined with him for anything from waywardness to rape and homicide."

■ The purpose of the proceeding to determine "delinquency" is to decide whether the accused is responsible for prohibited conduct and, when criminal, as noted, the consequences may be the same as in the case of an adult. Indeed, it is even possible that ultimately this could result in the juvenile being incarcerated in the penitentiary with adult offenders. § 13–8–60, N.M. S.A.1953. This contingency was noted in In re Gault, supra, in discussing denial of Fifth Amendment protection against self-incrimination in delinquency proceedings, as was the fact that the characterization of the proceedings as "civil" does not work a change in their nature. It was there said:

"It would be entirely unrealistic to carve out of the Fifth Amendment all statements by juveniles on the ground that these cannot lead to 'criminal' involvement. In the first place, juvenile proceedings to determine 'delinquency,' which may lead to commitment to a state institution, must be regarded as 'criminal' for purposes of the privilege against self-incrimination. To hold otherwise would be to disregard substance because of the feeble enticement of the 'civil' label-of-convenience which has been attached to juvenile proceedings. Indeed, in over half of the States, there is not even assurance that the juvenile will be kept in separate institutions, apart from adult 'criminals.' In those States juveniles may be placed in or transferred to adult penal institutions after having been found 'delinquent' by a juvenile court.

For this purpose, at least, commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called 'criminal' or 'civil.' * * *"

■ We see no escape from the conclusion that at the time of the adoption of our constitution petitioner could not have been imprisoned without a trial by jury. This being true, no change in terminology or procedure may be invoked whereby incarceration could be accomplished in a manner which involved denial of the right to jury trial. Hamilton v. Walker, 65 N.M. 470, 340 P.2d 407 (1959); Gutierrez v. Gober, 43 N.M. 146, 87 P.2d 437 (1939).

It follows that without concerning ourselves with whether the proceeding is denominated "civil," "criminal," "special," or something "entirely different." State v. Acuna, 78 N.M. 119, 428 P.2d 658 (1967); In re Santillanes, supra, the provisions of Art. II, § 12, N.M.Const., would operate to make unconstitutional any method of trial which would by-pass or eliminate the jury trial in determining guilt or innocence. As we will proceed to demonstrate, our juvenile code does not conflict with this constitutional right.

We would add that if the reasoning of In re Gault, supra, is applied in this case it would be difficult, in our view, to escape the conclusion that the jury trial guaranties of Art. II, § 14, N.M.Const., as well as those of the Sixth Amendment of the United States Constitution are likewise applicable. Compare People v. Urbasek, 38 Ill.2d 535, 232 N.E.2d 716 (1967). See, also, Dorsen and Rezneck, "In re Gault and the Future of Juvenile Law," Vol. 1, No. 4, Family Law Quarterly 1, 22 (1967). However, we find it unnecessary to so conclude in order to resolve the issue here presented.

■ In approaching the problem, we clearly keep in mind the rules of construction which require us to construe each word or phrase used in a statute in connection

with every other word, phrase or portion, so as to accomplish the legislative purpose. Allen v. McClellan, 75 N.M. 400, 405 P.2d 405 (1965); State v. Wylie, 71 N.M. 447, 379 P.2d 86 (1963); Reese v. Dempsey, 48 N.M. 417, 152 P.2d 157 (1944). We also do not overlook the equally important requirement that legislative acts should not be held unconstitutional unless no other conclusion can reasonably be reached, Community Public Service Co. v. New Mexico Public Service Commission, 76 N.M. 314, 414 P.2d 675 (1966); State ex rel. Lee v. Hartman, 69 N.M. 419, 367 P.2d 918 (1961), as well as the one requiring all doubts to be resolved in favor of constitutionality. Daniels v. Watson, 75 N.M. 661, 410 P.2d 193 (1966).

The applicable provisions are § 13–8–26, N.M.S.A.1953, and § 13–8–49, N.M.S.A. 1953, from which we quote the pertinent parts:

"13–8–26. The juvenile court shall have exclusive original jurisdiction in proceedings:

"A. Concerning any juvenile under the age of eighteen [18] years living or found within the county:

"(1) Who has violated any law of the state, or any ordinance or regulation of a political subdivision thereof; * * *."

"13–8–49. All cases of juveniles coming under the jurisdiction of the juvenile court shall be dealt with by the court at separate hearings and without a jury. * * *"

█ As we read the quoted language of the statute, the juvenile court obtains exclusive original jurisdiction over a juvenile under the age of eighteen years "[w]ho has violated any law of the state, * * *." We consider it significant that the jurisdiction attaches, not when a juvenile has been charged with a violation but when he "has violated" a state law. How, and by whom is the determination of whether he has done

so to be made? As we see it, these questions must be answered before the juvenile may be dealt with. We explained above how this must be done. We now answer the question of who shall make the determination by holding that it shall be done by the juvenile court. That court, entrusted with the handling of juvenile violators, must have power to determine the presence of facts upon which its jurisdiction is based. Sunray DX Oil Co. v. Federal Power Com'n, 351 F.2d 395 (10th Cir. 1965); Sun Ins. Co. v. Boyd, 105 So.2d 574 (Fla.1958); Fox Park Timber Co. v. Baker, 53 Wyo. 467, 84 P.2d 736, 120 A.L.R. 1020 (1938); Strother v. Day, 279 S.W.2d 785 (Ky. 1955); compare State ex rel. State Corp. Commission v. Zinn, 72 N.M. 29, 380 P.2d 182 (1963), where jurisdiction of an administrative agency was involved. It is only after facts required to vest jurisdiction have been found to be present that the exclusive original jurisdiction to deal with the juvenile attaches. When the jurisdiction has been determined, the juvenile court proceeds under § 13–8–49, supra, with hearings without a jury. See §§ 13–8–50 and 13–8–51, N.M.S.A.1953. Insofar as juveniles who have been found to have violated state law are concerned, this hearing would be for the purpose of considering the treatment and disposition to be accorded the juvenile, as provided in § 13–8–53, N.M.S.A. 1953. Concerning entitlement to jury trial of juveniles over whom jurisdiction is obtained by virtue of § 13–8–26(A) (2), (3) and (4), N.M.S.A.1953, we are not called upon to rule herein. However, we would observe, in passing, that a different result may follow when no violation of a criminal statute requiring trial by jury is charged.

We have in no sense overlooked § 13–8–27, N.M.S.A.1953. In pertinent part, it reads:

"No person under the age of eighteen [18] years shall be charged with commission of any offense, including a felony, in any court other than the juvenile court and any person knowingly

charging a child under eighteen [18] years of age with an offense in any court other than the juvenile court may be punished for contempt of the juvenile court by the judge thereof. Provided, however, that if any child fourteen [14] years of age or older is charged in juvenile court with an offense which would be a felony if committed by an adult, and if the court after full investigation deems it contrary to the best interests of such child or of the public to retain jurisdiction, the court may in its discretion certify such child for proper criminal proceedings to any court which would have trial jurisdiction of such offense if committed by an adult; but no child under fourteen [14] years of age shall be so certified. * * * "

It is because of the language last quoted that we conclude the determination of violation of a state law by a juvenile must be made in the juvenile court unless as provided therein the court certifies the child for criminal proceedings in district court. We know of no provision in our laws that in any way inhibits against jury trials in juvenile court to determine whether the juvenile charged with violation of state law has in fact violated the law. We do not read § 13–8–49, supra, to so provide. It requires a hearing without a jury only after jurisdiction under § 13–8–26(A), supra, has been determined. Section 13–8–27, supra, requires that all charges against juveniles be filed in juvenile court and grants to the juvenile court the power to decide (jurisdiction) whether it should "in the best interest of such child or of the public" proceed to determine if it has jurisdiction under § 13–8–26(A) (1), supra, or whether it should certify the matter to the district court. No jury is required to make this decision. The phrase "to retain jurisdiction" in § 13–8–27, supra, merely refers to the retained power to determine whether the jurisdictional facts are present to enable the court to dispose of the matter according to the post adjudicative procedures

provided in the Code. A juvenile charged with violation of a state law, as therein provided, is entitled to a trial by jury in juvenile court if there is no certification to district court under § 13–8–27, supra, and if the offense was one which would be triable by jury if committed by an adult. If there is certification to district court the trial is held in that court, and is a criminal trial.

Although the statutes are not comparable, other courts have so held. See State ex rel. Shaw v. Breon, 244 Iowa 49, 55 N.W.2d 565 (1952); In re Sanders, 53 Kan. 191, 36 P. 348, 23 L.R.A. 603 (1894). New Jersey has also held that trial by jury could not be denied a juvenile charged with an indictable crime. Ex parte Daniecki, 117 N.J.Eq. 527, 177 A. 91 (1935), aff'd 119 N.J. Eq. 359, 183 A. 298 (1936). However, this holding was later held to apply only where a juvenile was charged with murder. State v. Goldberg, 124 N.J.L. 272, 11 A.2d 299 (Sup.Ct.1940), aff'd 125 N.J.L. 501, 17 A.2d 173 (E & A 1940). Thereafter, the law was amended and New Jersey then adopted the rule almost universally applied that the proceeding was not criminal, and jury trial was not required. State v. Monahan, 15 N.J. 34, 104 A.2d 21, 48 A.L.R.2d 641 (1954).

For the last word from New Jersey, see In re State in Interest of Carlo, 48 N.J. 224, 225 A.2d 110, 116 (1966), wherein is is said, "Assuming a juvenile is not entitled to all the constitutional requirements of a criminal trial, we firmly believe he is at least entitled to a fact-finding process which measures up to the essentials of due process and fair treatment." We wholeheartedly subscribe to this principle.

In 46 Cornell L.Q. 387, 400 (1961), it is stated that juries in juvenile court proceedings are provided for in almost half of the states. Indeed, the right to trial by jury in certain circumstances under the law as it existed prior to 1955

was recognized by us in In re Santillanes, supra. Although the statute has been changed materially from that in effect from 1921 to 1955, we are convinced that jury trial to determine if petitioner has violated state law is required under the facts of this case where petitioner has been charged as a juvenile delinquent because of violation of state criminal statutes. Upon a determination by the jury that he had in fact committed the offense charged, the court would then proceed to deal with him as a juvenile as provided in § 13–8–53, N.M.S.A.1953. Providing a jury should present no problems since, as already held herein, the juvenile court is a part of the district court wherein juries are customarily provided. Of course, the jury may be waived [State v. Shroyer, 49 N.M. 196, 160 P.2d 444 (1945); State v. Hernandez, 46 N.M. 134, 123 P.2d 387 (1942)] but, insofar as the juvenile is concerned, this should be permitted only when advised by counsel and it is amply clear that an understanding and intelligent decision has been made. If the juvenile, after considering all the advantages and disadvantages attendant thereon, and having been advised by counsel, waives a trial by jury, then the benefits generally felt to attach through trial to the court would be his. See 114 U.Pa.L.Rev. 1171; 67 Colum. L.Rev. 281; 46 Cornell L.Q. 387. We assume that in most cases jury trial will be waived as in the best interests of the juvenile, and that it will be the exceptional case where a jury is demanded. This would appear to have been the experience elsewhere. See Dorsen and Rezneck, "In re Gault and the Future of Juvenile Law," Vol. 1, No. 4, Family Law Quarterly 1, 24, n. 92 (1967). By nothing which we have said do we intend to express any opinion as to the applicability of the holding in State ex rel. Gutierrez v. First Judicial District Court, 52 N.M. 28, 191 P.2d 334 (1948).

No issue being presented as to whether Count II is a petty offense if committed by an adult, and for which a jury is not required under Hamilton v. Walker, 65

N.M. 470, 340 P.2d 407 (1959), we have not considered if it is, or is not, of that class. Count I is a felony if committed by an adult and there is no question that the constitution guarantees a right to jury trial. Art. II, §§ 12, 14 N.M.Const.

We are not unaware that many experts in the field of juvenile court problems urge that it is to the child's best interest not to have a public jury trial. See Paulsen, Fairness to the Juvenile Offender, 41 Minn. L.Rev. 547, 549 (1957); 67 Colum.L.Rev. 281 (1967); 114 U.Pa.L.Rev. 1171, 1186 (1966); 46 Cornell L.Q. 387 (1961). Be this as it may, we are impressed with the continuing validity of the statement of Justice Bickley in his dissent in In re Santillanes, supra, where he said, "The rights of the individual guaranteed by the constitution cannot be determined by the criterion of whether we think them useful or otherwise," and consider it equally pertinent where statutory mandates are being considered.

In view of our conclusion that the denial of a jury trial by the juvenile court was error and that the writ must be made permanent, it is not necessary that we consider or answer the additional point argued that a constitutional question is presented because of the difference in periods which might have to be served in a reform school by a juvenile, as compared with that to which an adult could be sentenced to serve in prison.

No jury trial having been accorded to petitioner, although requested, the writ of habeas corpus heretofore issued should be made permanent.

It is so ordered.

CHAVEZ, C. J., and COMPTON and CARMODY, JJ., concur.

NOBLE, J., concurring in part and dissenting in part.

NOBLE, Justice (concurring in part and dissenting in part).

I agree that the authority to deal with delinquent minors is vested in the district court acting in the exercise of the jurisdiction granted by the 1955 Juvenile Code and that the exercise of such jurisdiction is not proscribed by a constitutional limitation.

I am not persuaded that the procedures by which a determination is to be made as to whether a minor is a "delinquent" as the result of certain alleged misconduct by him, in consequences of which he may be committed to a state institution, requires that determination to be by a jury, even if the minor is charged with misconduct which would be a felony if committed by an adult. Nor am I persuaded that a statute or the Federal or State Constitutions require a preliminary jury determination of the guilt or innocence of the juvenile as a condition to jurisdiction of the court attaching to a juvenile charged with being a delinquent by reason of his violation of a state law.

The Supreme Court of the United States, in considering the question of the right of indigents to appointed counsel, reasoned in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, that a provision of the Bill of Rights which is "fundamental and essential to a fair trial" should be made obligatory upon the states by the Due Process Clause of the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799.

Some of the differences in concept between dealing with juveniles and adults, however, were pointed out in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, where it was said:

"1. The theory of the District's Juvenile Court Act, like that of other jurisdictions, is rooted in social welfare philosophy rather than in the corpus juris.

Its proceedings are designated as civil rather than criminal. The Juvenile Court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. The objectives are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment. * * *"

That court said that the original and exclusive jurisdiction over minors vested in the Juvenile Code confers on the minor certain special rights and immunities. The court said:

"He is, as specified by the statute, shielded from publicity. He may be confined, but with rare exceptions he may not be jailed along with adults. He may be detained, but only until he is 21 years of age. * * * The child is protected against consequences of adult conviction such as the loss of civil rights, the use of adjudication against him in subsequent proceedings, and disqualification for public employment."

If the adjudication of "delinquency" must be by a jury with all of the procedures of a criminal trial, then certainly many of the immunities granted to minors will have been abolished. Among these, one considered most essential to the welfare of the child and in the interest of society is that of secrecy. There could be no secrecy with a jury trial. It is obvious to me that if there must be a fact-finding determination of delinquency by a jury, the first step has been taken in abolishing the difference in concept of treatment between juveniles and adults. Unless there is drastic revision of our laws applicable to juveniles, they may increasingly be charged and tried in the same manner as adults.

I suggest that the decision by the majority that a determination of delinquency must conform to all of the requirements of a criminal trial makes it imperative that the legislature re-examine our juvenile

code with a view to determining whether juveniles charged with violation of state laws should be treated as adults or whether at least the post-adjudicative or dispositional process of the juvenile concept should be retained. I find no compelling reason why due process or a fair trial requires a jury trial. The whole theory of dealing with juveniles differently than adult offenders places the duty to determine the facts regarding "delinquency" upon the court—not a jury. Certainly the essentials of a fair hearing can be had before the judge without a jury. In re State in Interest of Carlo, 48 N.J. 224, 225 A.2d 110, relied upon by the majority does not require a different result. That court only reiterated the holding of Kent requiring that the fact-finding process measure up to the essentials of due process and fair treatment. The juvenile in Carlo was charged with homicide. No suggestion was there made that failure to provide a jury fact-finding determination offended due process.

The majority expressly say they do not rest the requirement that a juvenile is entitled to a jury determination of delinquency upon due process but rather upon the premise that a juvenile charged with violation of a felony statute prior to adoption of the State Constitution could only have been charged and tried in the criminal courts as an adult and was entitled to a jury trial. Applying that reasoning, they overturn the entire concept of the difference in procedures between juveniles and adults. See Mack, The Juvenile Court, 23 Harvard L.Rev. 104, and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527.

Certainly the privilege granted to a defendant in a criminal prosecution by the Sixth Amendment to the Constitution of the United States, and its application to the states by the Due Process Clause of the Fourteenth Amendment is at least as mandatory as that contained in article II, section 12, of the New Mexico Constitution; however, no court has held that due process requires the determination of delinquency to be by a jury.

In my view, neither the constitution nor any statute requires an adjudication of delinquency with all of the requirements of a criminal trial. Kent said, respecting the requirements of due process in connection with a hearing to determine whether a child charged with violation of a criminal statute should be retained in the juvenile court or certified for treatment in the criminal courts as an adult:

"We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearings; but we do hold that the hearing must measure up to the essentials of due process and fair treatment."

In re Gault, supra, reiterated and affirmed the above rule of Kent and applied it as the correct rule in connection with a juvenile court adjudication of "delinquency." I am convinced that if due process does not require the fact-finding determination by a jury, this provision of our State Constitution likewise makes no such requirement.

A holding that there must be a preliminary fact-finding determination of violation of a criminal statute to give the juvenile court jurisdiction over a minor is completely inconsistent with the premise that the legislature did not create a separate juvenile court. There is but one court—the district court. The only tenable interpretation of the juvenile code is that it created a special procedure to be applied by district courts in the handling of minors charged with delinquency. To make the statute constitutional, we must interpret § 13–8–27, N.M.S.A.1953, as requiring the charging of any minor with the commission of a criminal offense only in accordance with the delinquency procedures applicable to juveniles, unless the court shall determine after full hearing that such minor should be charged and dealt with under the criminal laws and procedures as an adult. In other words, the original charge can only be in

accordance with the juvenile procedures. That section of the statute clearly gives the court jurisdiction over the minor.

Since there is no separate juvenile court, the question of requirements to vest jurisdiction in such a court becomes moot. The district court is the only court having jurisdiction of juveniles charged with being delinquent. That court certainly has inherent jurisdiction to determine whether the child is a delinquent so as to apply the post-adjudicative or dispositional process.

It is axiomatic that the court cannot certify a child to be tried as an adult unless the court has jurisdiction of both the subject-matter and person of the child. It is clearly inconsistent for the majority to say that jurisdiction does not attach until there has been a determination of delinquency by a jury in one case and in the same breath to hold that determination of the facts which give rise to jurisdiction need not be found if that court is to certify the child to be charged, tried and dealt with as an adult. In my view, if the majority be correct in holding a jury trial on the issue of delinquency is necessary to give jurisdiction in the one case, then if there is certification to be dealt with as an adult there must of necessity be two jury trials—one to determine whether the court had jurisdiction to certify the child for trial as an adult and again when he is tried as an adult.

I am convinced that the majority are clearly without any basis for holding that there is such a statutory mandate. Not only does the statute not require, but in fact it actually prohibits, a determination by a jury in express and unambiguous language. Section 13-8-49, N.M.S.A.1953, in part reads:

"All cases of juveniles coming under the jurisdiction of the juvenile court shall be dealt with by the court at separate hearings *and without a jury.*" (Emphasis supplied.)

All the statute does is to require a hearing. Any requirement for a jury determination could only arise by a statutory requirement for a hearing read in the light of the due process requirement of the Fourteenth Amendment. Since the right to a jury trial is denied a juvenile by statute, we are called upon to say whether, tested by our constitution or the Due Process Clause of the Fourteenth Amendment, the denial of the right to a jury trial offends constitutional guarantees. I am persuaded that they do not, and that there is clearly no basis for resting the requirement upon any language of the Juvenile Code.

I am compelled to disagree with the construction placed upon the statute by the majority requiring a preliminary fact finding of delinquency to be made by a jury to establish jurisdiction over that minor. The rule is well established that all provisions of a statute must be read together to ascertain the true intent of the legislature. Allen v. McClellan, 75 N.M. 400, 405 P.2d 405; Reese v. Dempsey, 48 N.M. 417, 152 P.2d 157; Cox v. City of Albuquerque, 53 N.M. 334, 207 P.2d 1017; State v. Thompson, 57 N.M. 459, 260 P.2d 370; Beatty v. City of Santa Fe, 57 N.M. 759, 263 P.2d 697. While § 13-8-26, N.M.S.A.1953, used the term "jurisdiction" in connection with children who by specified misconduct have become "delinquents," I am convinced that when read with the next section, § 13-8-27, the legislature intended that the court should only exercise its juvenile jurisdiction. In my view, the legislative intention was not to require a strict determination of whether the court has juvenile jurisdiction, but rather to deny jurisdiction over minors to other courts or for other treatment, except where certified to be dealt with as an adult.

Finding no compelling reason to impose the requirement of a jury determination of the question of delinquency, and that due process does not require a jury trial of that issue, I must, accordingly, dissent from that portion of the opinion which deals with the question of a jury trial.